MICHAEL S. DEVORKIN (*pro hac vice*)
JACQUELINE G. VEIT (*pro hac vice*)
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022
Telephone: 212-907-7300
Facsimile: 212-754-0330
Email: mdevorkin@golenbock.com
Email: jveit@golenbock.com

Attorneys for the Plaintiff,
Gerard A. McHale, Jr., P.A., Liquidation Trustee

JEROME N. LERCH (CSB #48194)
DEBRA STEEL STURMER (CSB #105276)
LERCH STURMER LLP
425 California Street, Ste. 2400
San Francisco, California 94104
Telephone: (415) 217-6340
Facsimile: (415) 217-2782
Email: jlerch@lerchsturmer.com
Email: dsturmer@lerchsturmer.com
Attorneys for Defendant Silicon Valley Law Group

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

| | |
|---|---|
| GERARD A. MCHALE, Jr., P.A., as Liquidation Trustee for the 1031 Debtors Liquidation Trust,<br><br>Plaintiff,<br><br>v.<br><br>SILICON VALLEY LAW GROUP, a professional corporation,<br><br>Defendant. | Case No. CV 10-04864-JCS |

**TRIAL STIPULATION NO. 1**

1674158.2

## THE UNDERSIGNED PARTIES HEREBY STIPULATE AND AGREE AS FOLLOWS:

### STIPULATED FACTS

These facts and the corresponding exhibits set forth in ¶¶ 1-19 may be admitted into evidence. The parties agree that it is not their intent to have the facts set forth in ¶¶ 1-19 read to the jury in their entirety by the court or court personnel. The parties further agree that counsel for each party may read the stipulated fact(s) to the jury at the logical point during their respective cases.

1. Atlantic Exchange Company, LLC, is a limited liability company, formed in August 2005, and known as AEC Delaware. Edward Okun was the sole managing member of AEC Delaware. On August 25, 2005 AEC Delaware acquired the following companies:

Atlantic Exchange Company, LLC (known as AEC Massachusetts);

AEC Finance Co, Inc.;

AEC Properties, Inc.;

AEC Reverse Co, Inc.; and,

Easton Exchange Services, LLC,

from J. Patrick Dowdall, Gold Creek Financial LLC, William A. Hazel, James F. Livesey and Charles D. Subrt. AEC Delaware purchased these companies for $4,250,000. Exhibit 198. These acquired entities will be collectively referred to as "AEC."

2. The 1031 Tax Group, LLC is a limited liability company known as "1031 Tax Group." Edward Okun was the sole managing member of 1031 Tax Group. On November 15, 2005, 1031 Tax Group purchased Security 1031 Services, Inc. and SOS 1031 Holding, Inc., from Todd R. Pajonas and Regal Holdings, LLC for $3 million. Exhibit 132. These acquired entities shall collectively be referred to as "SOS."

3. On June 22, 2006, 1031 Tax Group purchased National Intermediary, Ltd., known as "<u>NES,</u>" from William D. Bennett and Reagan H. Davis for $5 million. Exhibit 189.

4. On June 9, 2006, 1031 Tax Group purchased Real Estate Exchange Services, Inc., known as "<u>REES</u>" from David B. Shefman and Marga R. Shefman for $4,250,000.

5. On August 1, 2006, 1031 Tax Group acquired:

  Investment Exchange Group, LLC,

  Shamrock Holdings Group, LLC; and,

  Rutherford Investment, LLC,

from Daniel E. McCabe, Shirley L. McCabe, Andrew C. McCabe, McCabe Family, LLP, Chad J. Greenberg and J. Peter McCann, for $9 million, of which $7 million was paid at the time of the purchase, and $2 million was due in the future. Exhibit 381. These acquired entities will be collectively referred to as "<u>IXG</u>."

6. On December 18, 2006, 1031 Tax Group acquired 1031 Advance, Inc. from Janet Dashiell and Steven Allred for $2.5 million, Exhibits 254, 488, and 920, and entered into employment agreements with Janet Dashiell and Steven Allred, which are attached to Exhibit 254. 1031 Advance, Inc. will be referred to as "1031 Advance."

7. During the period September 2005 through March 2007:

  a. Okun was the sole owner, President and Chief Executive Officer of Investment Properties of America. Investment Properties of America will be referred to as IPofA.

  b. Lara Coleman was the Chief Operating Officer of IP of A, and also provided services to The 1031Tax Group.

1674158.2

      c.      Jeff Zacarias was the Chief Financial Officer of IP of A.

      d.      Okun was the sole member and manager of 1031 Tax Group,

      e.      After 1031 Tax Group purchased the respective entities, it owned the stock of AEC, SOS, REES, NES, IXG, and 1031 Advance.

      f.      Upon closing of the sale of 1031 Advance on December 18, 2006, 1031 Tax Group owned 100% of the stock of 1031 Advance.

      g.      After 1031 Tax Group purchased 1031 Advance, Janet Dashiell served as President of 1031 Advance and Steven Allred served as Vice President of 1031 Advance. In early 2007, Janet Dashiell became President and Chief Executive Officer of 1031 Tax Group.

      h.      The members of IXG, a limited liability company, were Daniel E. McCabe, Shirley L. McCabe, Andrew C. McCabe, McCabe Family, LLLP, Chad J. Greenberg and J. Peter McCann.

      i.      Okun was not an officer of any of the qualified intermediaries AEC, SOS, NES, REES, IXG, or 1031 Advance.

8. Robert McElroy is, and in November 2006 was, a partner in the law firm of McGuire Woods in Richmond, Virginia. Eric Perkins and David Field consulted with McGuire Woods about whether the transfers of funds from AEC, SOS, NES, REES, and IXG were proper. On November 2, 2006, Robert McElroy requested and received copies of the exchange agreements used by AEC, SOS, NES, REES and IXG. Exhibits 357, 682-85.

9. The following facts identify the authorized signatories on IXG bank accounts:

4

1674158.2

      a.      The only authorized signatories, on each of the four IXG banks accounts at Colorado Capital Bank that related to 1031 exchange transactions (the DDA account, the Pool account, the Exchange account and the Master Signature Card Account), were the five principals of IXG, Daniel E. McCabe, Shirley L. McCabe, Andrew C. McCabe, Chad J. Greenberg and J. Peter McCann known as the "IXG principals". The same was true for IXG accounts previously held at Matrix Bank.

      b.      The IXG principals were also the only signatories on any segregated accounts at Colorado Capital Bank that were established for the benefit of particular exchangers under the Master Signature Card Account or in connection with NES exchanges.

10. On March 19, 2009, Edward Okun was convicted by a jury in federal court in Richmond, Va. of the following charges based on acts relating to operating the qualified intermediaries and using their funds: one count of conspiracy to commit mail fraud and wire fraud under 18 U.S.C. §§ 1341, 1343, and 1349; one count of conspiracy to commit money laundering, *id.* §§ under 18 U.S.C. 371 and 1956(h); twelve counts of wire fraud, under 18 U.S.C. 1343, three counts of promotional money laundering, under 18 U.S.C. § 1956(a)(1)(A)(i); one count of concealment money laundering under 18 U.S.C. § 1956(a)(1)(B)(i); three counts of money laundering, under 18 U.S.C. § 1957; one count of bulk cash smuggling under 31 U.S.C. § 5332; and one count of making a false declaration, 18 U.S.C. § 1623(a), Okun was sentenced to a term

of imprisonment of 100 years in federal prison, which he is still serving. Edward Okun is unavailable to testify at the trial of this matter.

11. Silicon Valley Law Group is a professional law corporation with offices located at 25 Metro Drive, San Jose, California 95110.

12. James Chapman is an attorney licensed to practice law in California since 1987. In 2006, Mr. Chapman was one of the shareholders of Silicon Valley Law Group. Mr. Chapman's professional area of practice was and is in corporate transactions. Mr. Chapman was in charge of Silicon Valley Law Group's representation of 1031 Advance, Janet Dashiell, and Steven Allred, which began October 23, 2006. On or about February 2007, Mr. Chapman left Silicon Valley Law Group to join another law firm. Mr. Chapman is currently practicing law at a law firm in Palo Alto, California.

13. Michael Schachter is an attorney licensed to practice law in California since 2004. In 2006, Mr. Schachter was an associate attorney at Silicon Valley Law Group, who worked in both the real estate and corporate departments of the firm. Mr. Schachter left Silicon Valley Law Group with Mr. Chapman in February 2007. Mr. Schachter is currently practicing law in Walnut Creek, California.

14. Myron Brody is an attorney licensed to practice law in California since 1981. In 2006 Mr. Brody led Silicon Valley Law Group's real estate and land use practice group, and was the President and Chief Executive Officer of Silicon Valley Law Group.

15. Janet Dashiell and Steven Allred were the owners and founders of 1031 Advance. 1031 Advance opened for business as a Qualified Intermediary in January 2006. In October 2006 Ms. Dashiell contacted Mr. Schachter about Silicon Valley Law Group's legal representation because they were interested in pursuing the sale of 1031 Advance.

1674158.2

16. On October 23, 2006, Ms. Dashiell and Mr. Allred signed a written retainer agreement with Silicon Valley Law Group to represent 1031 Advance in connection with 1031 Advance's business matters.

17. On November 13, 2006 Janet Dashiell, who had been contacted by a business broker, informed Silicon Valley Law Group that Edward Okun was interested in purchasing 1031 Advance.

18. On November 18-19, 2006 Janet Dashiell and Steven Allred met with Edward Okun on his yacht in Florida to discuss the possible sale of 1031 Advance to Okun.

19. On December 18, 2006, 1031 Tax Group, purchased the stock of 1031 Advance for the sum of $2.5 million in cash, pursuant to the terms of a Stock Purchase Agreement, that Silicon Valley Law Group negotiated and drafted on behalf of 1031 Advance, Dashiell, and Allred, and the law firm Kluger Peretz negotiated and drafted on behalf of 1031 Tax Group. At the same time, Ms. Dashiell and Mr. Allred also entered into employment agreements with 1031 Advance that Silicon Valley Law Group negotiated and drafted on behalf of Dashiell, and Allred, and the law firm Kluger Peretz negotiated and drafted on behalf of 1031 Tax Group.

**STIPULATION CONCERNING ADMISSIBILITY OF EXHIBITS AND TESTIMONY**

1. The following exhibits are true copies of the exchange agreements for direct exchanges that were used by the respective Qualified Intermediaries from September 2005 through May 2007, and shall be admitted in evidence.

Exh. 683   Atlantic Exchange Company (AEC)

Exh. 131   Security 1031 Services, Inc. (SOS)

Exh. 357   Real Estate Exchange Services, Inc. (REES)

7

| | | |
|---|---|---|
| Exh. 185 | National Intermediary, Ltd. (NES) |
| Exh. 384 | Investment Exchange Group, LLC (IXG) |
| Exh. 265 | 1031 Advance, Inc. (1031 Advance) |

2.  The following exhibits shall be admitted in evidence.

| | |
|---|---|
| Exh. 451 | Plea Agreement of Lara Coleman |
| Exh. 452 | Statement of Facts of Lara Coleman |
| Exh. 454 | Criminal Information to which Lara Coleman pleaded guilty |
| Exh. 693 | Criminal Information to which Richard Simring pleaded guilty |
| Exh. 694 | Statement of Facts of Richard Simring |
| Exh.695 | Plea Agreement of Richard Simring |
| Exh. T33 | Transcript of guilty plea of Richard Simring |
| Exh. 711 | Statement of Facts of David Field |
| Exh.712 | Plea Agreement of David Field |
| Exh. 717 | Criminal Information to which David Field pleaded guilty |
| Exh. 718 | Criminal Judgment against David Field |

3.  Coleman's deposition testimony regarding her Restitution Order is admissible.

4.  The Trustee has provided SVLG with access to all bank and other records supporting the expert testimony of John Sordillo. Mr. Sordillo may testify at trial based on his review and analysis of those records without the necessity of those records being present at the trial or admitted into evidence. Nothing herein is a waiver of the right of SVLG to (1) cross examine Mr. Sordillo with respect to those records or any other aspect of his expert report and

1674158.2

testimony or (2) to object to any aspect of Mr. Sordillo's trial testimony, except the records may also be admitted into evidence, if the Court overrules any SVLG relevancy objections.

5. Exh. 401 is a true and correct copy of the Federation of Exchange Accommodators (FEA) Code of Ethics in effect in 2004 and may be admitted in evidence if the Court overrules SVLG'S relevancy objection. SVLG has objected and continues to object to the admissibility of any version of the FEA Code of Ethics.

6. Exh. 141 is a true and correct copy of the FEA Code of Ethics in effect in 2006 and may be admitted in evidence if the Court overrules SVLG's relevancy objection. SVLG has objected and continues to object to the admissibility of any version of the FEA Code of Ethics.

7. The Proofs of Claim that individual Exchangers filed with, and were accepted by, the Bankruptcy Court may be admitted if the Court overrules SVLG's relevancy objection. SVLG has objected, and continues to object, to the admissibility of any the testimony of any Exchanger and to the admission of their Proofs of Claim.

8. In connection with his testimony on January 5, 2011, and April 7, 2011, SVLG designated James Chapman under Rule 30(b)(6) as the witness to testify on SVLG's behalf as to the practices and procedures generally used by SVLG's corporate department, as of November 2006 and the three year period before, to conduct factual and legal due diligence on the purchase and sale of businesses for which SVLG was retained by its clients, and the training of attorneys with respect to such practices and procedures.

9. In connection with his testimony on January 7, 2011, and April 6, 2011, SVLG designated Myron Brody under Rule 30(b)(6) as the witness to testify on SVLG's behalf as to: the practices and procedures generally used by SVLG's real estate department, as of

1674158.2

November 2006 and the three year period before, to conduct factual and legal due diligence on real estate transactions for which SVLG was retained by its clients, and the training of attorneys with respect to such practices and procedures.

## CONDITIONAL STIPULATIONS AS TO ADMISSIBILITY OF EVIDENCE

1. If the Court overrules SVLG'S objections to the admissibility of Exh. 461 and 462, SVLG withdraws its objections to Exh. 176 and 177 and to the admission of relevant testimony about all four exhibits, while preserving for appeal its objections to such evidence and testimony.

2. If the Court determines that the testimony of James Rees is admissible, then SVLG withdraws its objections to the admissibility of Exhibits 413, 415, 416, 418, 419, 421, 423, 426, 427, 428 and 481 (collectively these 11 Exhibits are referred to as "the Western Gravel Documents"), while preserving for appeal its objections to such evidence and testimony.

3. If the Court determines that the email of Timothy Heaphy (Exh. 335), is admissible, then SVLG withdraws its objections to Exh. 335, while preserving for appeal its objections to such evidence.

4. If the Court overrules SVLG's objection and determines to admit the testimony of an Exchanger, then SVLG withdraws its objections to the admission of that Exchanger's Proof of Claim filed with the Bankruptcy Court, including but not limited to Exh. 631, 633, 634, 635, 636, 670, 671A, 671B, 675, 676A, 676B, while preserving for appeal its objections to such evidence and testimony.

5. If the Court overrules SVLG's objection to Exh. 456, SVLG withdraws its objection to the designated testimony of Coleman at pp. 93-95, while preserving for appeal its objections to such evidence and testimony.

1674158.2

6. If the Court denies SVLG's Motion for Partial Summary Judgment on the Measure of Damages, SVLG withdraws its objection to the admissibility of the appendices and exhibits to Mr. Sordillo's report and they shall be admitted into evidence, while preserving for appeal its objections to such evidence. These are Exhibits 901-907, 590, T4 and T-6.

## STIPULATIONS CONCERNING THE CONDUCT OF THE TRIAL

1. Any claim by SVLG that it is entitled to a credit against any judgment of damages as a result of the Trustee's settlements with or recoveries from, third parties, including the issue whether such amounts constitute collateral sources, shall be decided by the Court post-trial and not by the jury. There shall be no further discovery on these issues post-trial, except that public filings from the Bankruptcy case may be used post-trial in connection with these issues. Nothing in this Stipulation shall prevent the Trustee from proffering the testimony of Mr. Gerard McHale about the bankruptcy proceedings, bankruptcy plan and his role as the Liquidation Trustee and/or his efforts to obtain recoveries or settlements. Nothing in this Stipulation waives any objection by SVLG to any of the trial testimony of Gerard McHale, all of which objections are expressly reserved.

2. To the extent that SVLG is the prevailing party at trial, SVLG's claim for attorneys' fees will be addressed by the Court in post-trial proceedings and will not be resolved by the jury. The Trustee reserves all rights with respect to such claim, including but not limited to the Trustee's contention that this Court lacks jurisdiction over such a claim and such a claim is untimely.

3. SVLG waives and will not assert any defenses of statute of limitations, laches, and failure to mitigate damages. Nothing in this Stipulation is intended to restrict SVLG

11

1674158.2

from presenting evidence or argument at trial that the damages alleged by the Trustee were caused by entities or individuals other than SVLG.

4.	It is not necessary to introduce into evidence the underlying documents on which the experts relied in order for the expert to testify about or in reliance on them, provided that the document has been made available to the other party in a timely manner. Nothing in this paragraph waives any party's right to object that the expert's testimony exceeds the scope of the opinions expressed in that expert's report. Nothing in this paragraph waives any party's right to object to the admissibility of any of these documents or to make other objections to the expert's testimony about such documents

5.	If the trial exhibit was marked as a deposition exhibit more than once and is referred to in admitted deposition testimony by more than one number, it shall be referred to at trial by the lowest exhibit number, and the other numbers used at deposition shall also been shown on the first page of the exhibit so that the deposition testimony will be clear.

6.	Lerch Sturmer will accept service of trial subpoenas for James Chapman, Myron Brody, and Michael Schachter. The Trustee agrees to give Lerch Sturmer advance notice in writing of the time and date upon which each of these three witnesses is to appear at least 48 hours before they are initially called to testify.

7.	The parties have no authenticity objections to any trial exhibits designated to date, meaning that the parties agree that the designated exhibits are true and correct copies of the documents that they purport to be. Neither party will be required to produce an original of any previously designated exhibit at trial.

8.	The parties agree that the *in limine* motions are not exhaustive, and either party may object to evidence at trial if not inconsistent with (1) the stipulations and agreements

12

1674158.2

set forth herein; (2) any other signed Stipulation between the parties; and/or (3) any Order of this Court.

9. The parties reserve the right to object to evidence as cumulative.

DATED: December 17, 2012

GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP

By: /s/ Michael S. Devorkin

Michael S. Devorkin, Esq. (*pro hac vice*)
Jacqueline G. Veit, Esq. (*pro hac vice*)
Attorneys for Plaintiff Gerard A. McHale, Jr., P.A., as Liquidation Trustee for the 1031 Debtors Liquidation Trust

DATED: December 17, 2012

LERCH STURMER LLP

By: /s/ Debra Sturmer

Jerome N. Lerch, Esq.
Debra Steel Sturmer, Esq.
Attorneys for Defendant Silicon Valley Law Group

Dated: 1/16/13

IT IS SO ORDERED
Judge Joseph C. Spero
UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

13

1674158.2