NILS ROSENQUEST [SB# 87661]
ROSENQUEST & ASSOCIATES
2720 Taylor Street, Suite 420
San Francisco, California 94133
Telephone: 415-292-0980
Facsimile: 415-292-0989
Email: rosenquest@earthlink.net

MICHAEL S. DEVORKIN (pro hac vice)
JACQUELINE G. VEIT (pro hac vice)
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022
Telephone:    212-907-7300
Facsimile:    212-754-0330
Email:        mdevorkin@golenbock.com
Email:        jveit@golenbock.com

Attorneys for Plaintiff Gerard A. McHale, Jr., P.A., Liquidation Trustee

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

| | |
|---|---|
| GERARD A. MCHALE, Jr., P.A., as Liquidation Trustee for the 1031 Debtors Liquidation Trust,<br><br>            Plaintiff,<br><br>      v.<br><br>SILICON VALLEY LAW GROUP, a professional corporation,<br><br>            Defendant. | Case No. CV 10-04864-JCS<br><br>**PLAINTIFF'S TRIAL MEMORANDUM NO. 2** |

1720799.4

# **TABLE OF CONTENTS**

I.   Proof of The Legal Negligence Claim ............................................................... 1

    A.   The Standard of Care and Duties SVLG Owed to 1031 Advance .................. 2

    B.   Causation ............................................................................................. 5

        1.   The Substantial Factor Test ............................................................ 5

        2.   Substantial Factor in Malpractice Cases Versus Multiple Factors ...... 6

        3.   Plaintiff Has Suffered Damage in the Amount of Lost Exchange
           Funds. ........................................................................................ 8

II.   Superseding Cause ................................................................................... 8

III.   Comparative Negligence ............................................................................ 11

IV.   SVLG Cannot Establish the Affirmative Defense of Unclean Hands, and Its
    Proposed Jury Instruction Is Not Proper. ...................................................... 14

    A.   SVLG Does Not Have A Right To A Jury Trial On The Equitable Defense
        of Unclean Hands. ............................................................................... 15

    B.   Unclean Hands Is Based Only On Intentional Misconduct That Is Properly
        Imputed to the Plaintiff. ........................................................................ 17

        1.   Type of Conduct .......................................................................... 17

        2.   Can the Misconduct Be Imputed to Plaintiff? .................................. 17

    C.   Even If The Intentional Misconduct Is Properly Imputed to the Plaintiff,
        SVLG Must Also Show That It Was Directly Related To SVLG's
        Malpractice. ........................................................................................ 22

        1.   The Alleged Misconduct Is Not Directly Related To SVLG's Legal
           Malpractice and Did Not Harm SVLG ........................................... 26

        2.   Under No Circumstances Can The Unclean Hands Defense Affect the
           $23.2 Million Lost From 1031 Advance on December 19, 2006. ...... 29

    D.   Equity Requires Denial of The Unclean Hands Defense ............................. 31

    E.   Unclean Hands Should Not Be Applied against a Bankruptcy Trustee. ......... 32

V.   SVLG Should Not Be Permitted to Offer Testimony of Its Damages Expert Curtis
    Burr In Light Of The Court's January 28, 2013 Decision. ................................ 32

i

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Am. Motorcycle Assoc. v. The Superior Court of Los Angeles County,*
    20 Cal. 3d 578 (Cal. 1978)..............................................................................31, 32

*Arreola v. County of Moterey,*
    122 Cal.Rptr.2d 38 (Cal. App. 2002)..............................................................8

*Ball v. Johanns,*
    2008 WL 269069 (E.D. Cal. Jan. 29, 2008).....................................................17

*Barton v. Owen,*
    139 Cal. Rptr. 494 (Cal. App. 1977).................................................................11

*Bedolla-Reyes v. Vallier,*
    2012 WL 5998571 (Cal. App. Dec. 3, 2012)....................................................11

*Blain v. Doctor's Co.,*
    222 Cal. App. 3d 1048 (Cal. App. 1990)..........................................................27

*Bolen v. Woo,*
    158 Cal. Rptr. 454 (Cal. App. 1979).................................................................11

*Boothby v. Parker,*
    2010 WL 745158 (Cal. App. March 5, 2010)...............................................5, 6, 7

*Breeden v. Kirkpatrick & Lockhart, Inc. (In re The Bennett Funding Group),*
    336 F.3d 94 (2d Cir. 2003)................................................................................22

*Brown v. Grimes,*
    192 Cal. App. 4th 265 (Cal. App. 2011)......................................................23, 25

*Calvert v. Huckins,*
    875 F. Supp. 674 (E.D. Cal. 1995)..................................................................18

*Casey v. United States Bank Nat. Assn,*
    127 Cal.App.4th 1138 (Cal. App. 2005)................................................20, 24, 28

*Chapman v. Superior Court,*
    130 Cal. App. 4th 261 (Cal. App. 2005)..........................................................27

*Charalambopoulos v. UHS of Rancho Springs, Inc.,*
    2012 WL 4078783 (Cal. App. Sept. 18, 2012).................................................12

*Cohen v. Hoffman, Sabban & Watenmaker,*
    2009 WL 1886911 (Cal. App. July 2, 2009)...............................................11, 12

1720799.4

*Cole v. Doe 1 Thru 2 Officers of the City of Emeryville Police Dep't,*
   387 F. Supp. 2d 1084 (N.D. Cal. 2005) ......................................................................1

*D & A Mortgage Fund II, L.P. v. Herring & Loftus,*
   2002 WL 31421285 (Cal. App. Oct. 29, 2002) ........................................................12

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,*
   890 F.2d 165 (9th Cir. 1989) ..............................................................................17, 25

*Drust v. Drust,*
   113 Cal. App. 3d 1, 169 Cal. Rptr. 750 (Cal. App. 1980) ........................................11

*FDIC v. O'Melveny & Myers,*
   969 F.2d 744 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994),
   *on remand* 61 F.3d 17 (9th Cir. 1995) ....................................................................19

*Ford v. Palmden Restaurants, LLC,*
   2012 WL 3089406 (Cal. App. July 31, 2012).........................................................11

*Gill v. Tamalpais Union High School Dist.,*
   2008 WL 2043239 (Cal. App. May 14, 2008).........................................................9

*Granite State Insurance Co. v. Smart Modular Technologies, Inc.,*
   76 F.3d 1023 (9th Cir. 1996) ................................................................................15

*Heggnes v. Risley,*
   2008 WL 5394932 (Cal. App. Dec. 29, 2008)....................................................1, 6

*Imperial Credit Industries, Inc. v. Lerner,*
   2008 WL 4346785 (C.D. Cal. Sept. 18, 2008)...........................................17, 23, 24

*In re Chinacast Education Corporation Securities Litigation,*
   2012 WL 6136746 (C.D. Cal. Dec. 7, 2012)........................................................19, 20

*In re JTS Corp.,*
   305 B.R. 529 (Bkrtcy.N.D.Cal. 2003) ...............................................................3, 4, 12

*In re National Consumer Mortgage LLC,*
   2013 WL 164247 (D. Nev. Jan. 14, 2013)..........................................................19, 20

*Janik v. Rudy, Exelrod & Zieff,*
   14 Cal.Rptr.3d 751 (Cal. App. 2004)...........................................................3, 4, 5, 10

*Jaramillo v. County of Orange,*
   200 Cal. App. 4th 811 (Cal. App. 2011) ...............................................................25

*JIPC Management, Inc. v. Incredible Pizza Co., Inc.,*
   2009 WL 8591607 (C.D. Cal. July 14, 2009)........................................................15

iii

*Kahn v. East Side Union High School Dist.,*
   4 Cal.Rptr.3d 103 (Cal. 2003) .................................................................................9, 13

*Karapetian v. Garibian & Associates,*
   2006 WL 44428 (Cal. App. Jan. 10, 2006) ...........................................................11, 12

*Kendell Jackson v. The Superior Court of Stanislaus County,*
   76 Cal.App.4th 970, 90 Cal.Rptr.2d 743 (Cal. App. 1999) ............................23, 24, 26

*Knight v. Jewett,*
   3 Cal. 4th 296 (Cal. 1992) ...........................................................................................12

*Lee v. Montgomery,*
   2008 WL 4052920 (Cal. App. Sept. 2, 2008) .......................................26, 27, 28, 29

*Li v. Yellow Cab Co.,*
   13 Cal. 3d 804, 119 Cal. Rptr. 858 (1975) .............................................................11, 31

*Lombardo v. Huysentruyt,*
   110 Cal.Rptr.2d 691 (Cal. App. 2001) ................................................................8, 9, 13

*Marin v. Joy,*
   2009 WL 4194970 (Cal. App. Nov. 25, 2009) ...............................................................11

*Mayes v. Bryan,*
   44 Cal. Rptr. 3d 14 (Cal. App. June 21, 2006) .........................................................5, 6

*McHale v. Silicon Valley Law Group,*
   2011 WL 6990187 (N.D. Cal. Dec. 14, 2011)(Ware, J.) ..............................................20

*Meyer v. Glenmoor Homes, Inc.,*
   246 Cal. App. 2d 242 (Cal. App. 1966) .......................................................................19

*Mosier v. Stonefield Josephson, Inc., CPA's,*
   2011 WL 5075551 (C.D. Cal. Oct. 25, 2011)..................................................17, 24, 28

*Mutuelles Unies v. Kroll & Linstrom,*
   957 F.2d 707 (9th Cir. 1992) ...............................................................................10, 12

*Nichols v. Keller,*
   19 Cal.Rptr.2d 601 (Cal. App. 1993)......................................................................2, 3, 4

*Pac. Gas & Elec. Co. v. United States,*
   70 Fed. Cl. 758 (Fed. Cl. 2006) .....................................................................................34

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton,*
   35 Cal. Rptr. 3d 31 (Ct. App. 2005) ..............................................20, 24, 25, 31

iv

1720799.4

*Peterson v. McGladrey & Pullen, LLP*,
   676 F.3d 594 (7th Cir. 2012) ................................................................28, 29

*Res-Care, Inc. v. Roto-Rooters Servs. Co.*,
   2011 WL 3353893 (N.D.Cal. Aug. 3, 2011) ...................................8, 9, 13

*River Colony Estates General Partnership v. Bayview Financial Trading Group, Inc.*,
   287 F. Supp.2d 1213 (S.D. Cal. 2003) ..............................................17, 19

*Rollins Burdick Hunter of So. Calif. Inc.v. Alexander & Alexander Servs. Inc.*,
   206 Cal. App. 3d 1, 253 Cal. Rptr. 338 (Cal. App. 1988) .......................18

*Rosh v. Cave Imaging Sys., Inc.*,
   32 Cal. Rptr. 2d 136 (1994) ......................................................................12

*Scarff v. Jackson Nat. Life Ins. Co.*,
   2005 WL 1562936 (N.D. Cal. June 24, 2005) ...........................................10

*Scottsdale Ins.,Co.v. OU Interests, Inc.*,
   2005 WL 2893865 (N.D. Cal. Nov. 2, 2005) ..............................................1

*Sharp v. KPMG (In re Sharp International Corp.)*,
   278 B.R. 28 (Bankr. E.D.N.Y. 2002).........................................................20

*Silverman v. H.I.L. Associates Ltd. (In re Allou Distributors, Inc.)*,
   387 B.R. 365 (Bankr. E.D.N.Y. 2008).......................................................20

*Smith v. Lewis*,
   530 P.2d 589 (Cal. 1975), *overruled on other grounds by In re Marriage of Brown*,
   126 Cal.Rptr.633 (Cal. 1976)...........................................................4, 5, 8

*Sonora Diamond Corp. v. Superior Court*,
   83 Cal. App. 4th 523 (Cal. App. 2000) .....................................................18

*Spinner Corp. v. Princeville Dev. Corp.*,
   849 F.2d 388 (9th Cir. 1988) .......................................................................1

*Theobald v. Byers*,
   13 Cal. Rptr. 864 (Cal. App. 1961) ..............................................13, 14, 31

*Third Eye Blind v. Near North Entm't Ins. Servs.*,
   26 Cal.Rptr.3d 452 (Cal. App. 2005) ...................................................6, 7, 8

*U.S. Fire Ins. Co. v. Vesta Strategies, LLC*,
   No. C 09-02388 JW (N.D. Cal. July 14, 2011) (Ware, J.). Dkt. 70 at Ex. 48 .......31

*Unilogic, Inc. v. Burroughs Corp.*, 12 Cap. Rptr. 2d 741 (Ct. App. 1992) ....................15

v

*USACM Liquidating Trust v. Deloitte & Touche LLP*,
   764 F.Supp.2d 1210 (D. Nev. 2011) .................................................................. 22

*Vickers v. U.S.*,
   228 F.3d 944 (9th Cir. 2000) ........................................................................... 10

*Viner v. Sweet*,
   30 Cal.4th 1232 (Cal. 2003) ........................................................................ 5, 6

*Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.*,
   212 B.R. 34 (S.D.N.Y. 1997) ........................................................................... 21

*Wright v. Stang Mfg. Co.*,
   63 Cal. Rptr. 2d 422 (Cal.. App. 1997) ........................................................... 31

*Wright v. Williams*,
   47 Cal.App.3d 802 (Cal. App. 1975) ............................................................ 2, 3

**STATUTES**

Penal Code § 484 ................................................................................................. 14

**OTHER AUTHORITIES**

6 Witkin, Summary of California Law, Torts § 1187 ........................................... 1

1720799.4

1    Plaintiff Gerard A. McHale, Jr., P.A., Liquidation Trustee for the 1031 Debtors

2 Liquidation Trust (the "Trustee"), submits this Trial Memorandum No. 2 as its Trial Brief,

3 together with the Pretrial Declaration of Michael S. Devorkin, and the exhibits thereto

4 ("Devorkin Pretrial Declaration").

5 **I.    Proof of The Legal Negligence Claim**

6    In an action for legal malpractice, a plaintiff must prove the following elements: (1) the

7 duty of the attorney to use such skill, prudence, and diligence as members of his or her

8 profession commonly possess and exercise; (2) a breach of that duty; (3) that the breach was a

9 substantial factor in causing the resulting injury; and (4) actual loss or damage resulting from the

10 attorney's negligence.[1] *Heggnes v. Risley*, 2008 WL 5394932, *3 (Cal. App. Dec. 29, 2008).[2]

11 The standard jury instruction requires the Trustee to prove that:  (1) Silicon Valley Law Group

12 ("SVLG") was negligent in handling the transaction for 1031 Advance, Inc. ("1031 Advance");

13 (2) the negligence harmed 1031 Advance; and (3) the negligence was a substantial factor in

14 causing harm to 1031 Advance.   CACI 400; Stipulated Instruction No. 56.

15    In addition, since Mr. Chapman held himself out as a specialist in mergers and

16 acquisitions, he had the duty (1) to have the knowledge and skill ordinarily possessed, and (2) to

17 use the care and skill ordinarily used, by reputable specialists practicing in the same field under

---

18 [1] "Substantial factor" has replaced the term "proximate cause" in this standard.  6 Witkin, Summary of
California Law, Torts § 1187, at 554-557.

19

20 [2] While there are cases to the contrary, the general consensus in this district is that unpublished state court
decisions, while not binding precedent on the federal court, may be relied on as "persuasive authority."
*See Scottsdale Ins., Co.v. OU Interests, Inc.*, 2005 WL 2893865, *7 (N.D. Cal. Nov. 2, 2005) (relying on

21 unpublished California intermediate appellate court decision presenting factual situation "virtually
identical" to the case before the district court, as "persuasive authority").  *See also Cole v. Doe 1 Thru 2*

22 *Officers of the City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1103, n. 7 (N.D. Cal. 2005)
(acknowledging California Rule of Court prohibiting citation of or reliance on unpublished state court
decision but stating that rule is "not binding in the federal courts") *And see Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388, 390, n. 2 (9th

23 Cir. 1988) ("[T]he unreported decision of a state district court . . . is not binding on us, although we may

24 rely on it to the extent its reasoning is persuasive").

1720799.4

similar circumstances.  BAJI 6.37.1; Stipulated Instruction No. 58.  If necessary, he had the duty to consult with a specialist about 1031 exchange issues.  CACI 604; Disputed Instruction No. 59.

### A.    The Standard of Care and Duties
### SVLG Owed to 1031 Advance

The first element requires both the existence of an attorney-client relationship between Plaintiff and SVLG and the scope of the duties imposed by that relationship.  Where, as here, it is undisputed that SVLG served as 1031 Advance's attorney between October 23, 2006, and at least December 19, 2006 in connection with the sale of the business to 1031 Tax Group, Inc. ("1031 Tax Group"), the only issue is the scope of SVLG's obligations in undertaking that representation.

An attorney is negligent if he fails to use the skill and care that a reasonably careful attorney would have used in similar circumstances.  This level of skill, knowledge, and care is referred to as "the standard of care."  CACI 600; Disputed Instruction No. 57.  The standard of care is defined by certain general duties that an attorney owes to his client:

- The duty to have that degree of learning and skill ordinarily possessed by reputable attorneys practicing under similar circumstances. *See Nichols v. Keller*, 19 Cal.Rptr.2d 601, 608 (Cal. App. 1993) ("An attorney, by accepting employment to give legal advice or render legal services, impliedly agrees to use ordinary judgment, care, skill and diligence in the performance of the tasks he or she undertakes."); *Wright v. Williams*, 47 Cal.App.3d 802, 809 (Cal. App. 1975) ("Generally the creation of the attorney-client relationship imposes on the lawyer the obligation to represent his client with such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of tasks that they undertake.").

2

1    •      The duty to use the care and skill ordinarily exercised in like cases by reputable

2    members of the profession practicing under similar circumstances. *Wright*, 47 Cal.App.3d at 809;

3    *see also Janik v. Rudy, Exelrod & Zieff*, 14 Cal.Rptr.3d 751, 755 (Cal. App. 2004).

4    •      The duty to use reasonable diligence and his best judgment in the exercise of skill

5    and the application of learning. *See Janik*, 14 Cal.Rptr.3d at 755.

6    These three general duties form the basis of the standard of care instruction.  BAJI 6.37;

7    Disputed Instruction No. 57.  In addition to these general duties which the standard instruction

8    recognizes, Plaintiff's expert Christopher Jacobs will testify about the duties comprising the

9    standard of care required of SVLG to perform in this specific case, including but not limited to

10   ascertaining the client's objectives and managing them to a successful conclusion by adequately

11   communicating with and informing the clients; adequately conducting factual and legal due

12   diligence and explaining the same and the risks to the clients; negotiating and drafting an

13   adequate purchase agreement, whose terms protected the interests of the clients and the security

14   of the exchange funds, and, if necessary, recommending against the transaction.

15   California courts have recognized the following specific duties that apply here, and

16   Plaintiff requests that the Court so instruct the jury (Disputed Instruction No. 57):

17   •      The duty to alert their client to legal problems that were reasonably apparent to

18   them even if they fall outside the retention.  *In re JTS Corp.*, 305 B.R. 529, 551-52

19   (Bkrtcy.N.D.Cal. 2003); *Janik*, 14 Cal.Rptr.3d at 758; *Nichols*, 19 Cal.Rptr.2d at 608.

20   •      The duty to volunteer their legal advice to further their clients' objectives and

21   avoid material adverse consequences to the clients with respect to the issues at hand, regardless

22   of whether the clients asked for the legal advice. *Janik*, 14 Cal.Rptr.3d at 758.

23

24

3

- The duty to provide alternatives to their clients to resolve legal issues that arose if not doing so would have adverse consequences to their clients. *Id.* at 759.

- The duty to do research in giving advice to their clients that they are uncertain about. *Smith v. Lewis,* 530 P.2d 589, 595-96 (Cal. 1975), *overruled on other grounds by In re Marriage of Brown*, 126 Cal.Rptr.633 (Cal. 1976); *Janik,* 14 Cal.Rptr.3d at 755.

While "the extent of an attorney's duty to act necessarily depends on the scope of the attorney-client relationship, and the scope of this relationship may be limited by the agreement between the attorney and the client," *Janik,* 14 Cal.Rptr.3d at 758, an attorney may nevertheless "have a duty to alert clients to legal problems that are reasonably apparent, even when they fall outside the scope of the retention." *In re JTS Corp.,* 305 B.R. at 551-52; *Janik,* 14 Cal. Rptr.3d at 758 ("But an attorney who undertakes one matter on behalf of a client owes that client the duty to at least consider and advise the client if there are apparent related matters that the client is overlooking and that should be pursued to avoid prejudicing the client's interests."); *Nichols*, 19 Cal.Rptr.2d at 608.   This obligation is justified because an attorney's skill renders him "substantially more qualified to recognize potential legal problems than the typical client would be." *In re JTS Corp.,* 305 B.R. at 551-52.

An attorney's basic function is to serve as an advisor to his client, and he may be found liable for malpractice where he fails to provide advice. *Janik*, 14 Cal. Rptr.3d at 758. "Not only should an attorney furnish advice when requested, but he or she should also volunteer opinions when necessary to further the client's objectives." *Id.* Although counsel need not caution a client about every possible alternative, he is charged with advising his clients about those that "may result in adverse consequences if not considered." *Id. (citing Nichols*, 19 Cal.Rptr.2d at 608). In so doing, an attorney must "use such skill, prudence and diligence as other members of

4

1  the profession commonly possess and exercise in identifying and brining to the client's attention

2  other courses of action that warrant consideration." *Id.* at 759.  This obligation includes a duty to

3  "undertake reasonable research in an effort to ascertain relevant legal principles and to make an

4  informed decision as to the course of conduct based upon an intelligent assessment of the

5  problem." *Smith,* 530 P.2d at 595; *Janik,* 14 Cal. Rptr.3d at 755.

6        Plaintiff will show that SVLG breached its duty to 1031 Advance by (1) failing to

7  ascertain and meet the objectives of 1031 Advance; (2) failing to conduct proper factual and

8  legal due diligence about the 1031 Tax Group and Okun's practices; (3) failing to advise 1031

9  Advance about Okun's practices and the due diligence process and results; (4) failing to

10  negotiate and draft a purchase agreement to properly meet 1031 Advance's objectives and

11  protect 1031 Advance; and (5) failing to warn adequately about the risks of the transaction and to

12  caution against it.

13  **B.   Causation**

14        A plaintiff in a transactional legal malpractice suit must "establish causation by showing

15  *either* (1) that but for the negligence, the harm would not have occurred, or (2) that the

16  negligence was a concurrent independent cause of the harm." *Viner v. Sweet*, 30 Cal.4[th] 1232,

17  1241 (Cal. 2003) (emphasis added).  The proper standard instruction charges that plaintiff must

18  show that the negligent handling of the transaction was "a substantial factor in causing harm to

19  plaintiff." CACI 400; Stipulated Instruction No. 56.  CACI 430 reflects the incorporation of "but

20  for" causation in the "substantial factor" test. *Mayes v. Bryan*, 44 Cal. Rptr. 3d 14, 27-28 (Cal.

21  App. June 21, 2006); *Viner,* 30 Cal.4[th] at 1239.

22  **1.   The Substantial Factor Test**

23        A plaintiff must show that it is more likely than not that plaintiff would have obtained a

24  more favorable result. *Viner,* 30 Cal.4[th] at 1244; *Boothby v. Parker*, 2010 WL 745158, *9 (Cal.

5

App. March 5, 2010).   The central question is what would have happened if the defendant attorney had not been negligent.  *Viner*, 30 Cal. 4th at 1242.   While there are various methods for proving causation in a legal malpractice context, in a transactional representation case, the "no deal" and "better deal" scenarios apply.  *See id.* at 1240 n. 4.   Under the "no deal" and "better deal" methods, plaintiff must show that absent SVLG's conduct, (1)  plaintiff would have elected not to do the deal, and this would have been the better result; or (2)  plaintiff would have negotiated a more advantageous deal.  *Id.* at 1243.

Plaintiff does not bear the burden of establishing causation with absolute certainty and can meet the burden with circumstantial evidence.  *Boothby*, 2010 WL 745158 at *9.

## 2.   Substantial Factor in Malpractice Cases Versus Multiple Factors

California courts have recognized that in cases of transactional malpractice involving multiple causes, the "substantial factor" test applies.  *See Boothby,* 2010 WL 745158 at *9.   A "substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm."   CACI No. 430; Stipulated Instruction No. 63; *Boothby*, 2010 WL 745158 at *9; *Heggnes*, 2008 WL 5394932 at *4.   A substantial factor "does not have to be the only cause of the harm."   *Id.*; *Mayes*, 44 Cal.Rptr.3d at 25 ("Conduct can be considered a substantial factor [] if it has created a force or series of forces which are in continuous and active operation up to the time of the harm") (internal citations omitted).   "It is not essential to a recovery of damages that a defendant's wrongful act be the sole and only cause of the injury; it is sufficient if it be a proximate cause which in the natural course of events produced, either by itself or in conjunction with other causes, the damage."   *Third Eye Blind v. Near North Entm't Ins. Servs.*, 26 Cal.Rptr.3d 452, 458 (Cal. App. 2005) (internal citations omitted).

In the legal malpractice context, the "substantial factor" inquiry "permits more than one cause of harm even if none was sufficient in and of itself to cause the harm."  *Heggnes*, 2008 WL

6

1   5394932 at *4.   "An attorney's negligence, combined with another's exploitation of that

2   negligence, can both be concurrent causes of harm." *Boothby*, 2010 WL 745158 at *9.  Even if

3   there are multiple factors, the defendant is still liable if its negligence was a substantial factor.

4   Stipulated Instructions No. 63 and 64; CACI 430 and 431.  In *Boothby*, plaintiff brought a legal

5   negligence suit against the attorney hired to prepare a real estate agreement and operating

6   agreement on behalf of plaintiff's limited liability company.  At the behest of the other member

7   of the company (also a defendant), the attorney excluded the plaintiff from the real estate

8   transaction by removing the company's name from the transaction documents (and replacing it

9   with the other member-defendant's name).  The court denied the defendant attorney's motion for

10  judgment notwithstanding the verdict, holding that substantial evidence supported that the

11  attorney's negligence facilitated that member-defendant's breach of duty and was a substantial

12  factor in causing harm to plaintiff.  *Boothby*, 2010 WL 745158 at *9-10.

13      *Third Eye Blind*, 26 Cal.Rptr.3d 452, although not a legal malpractice case, demonstrates

14  how an advisor's negligence can be an independent cause of the injury.  There, associated

15  corporate entities of a musical group brought negligence claims against their business manager

16  and insurance broker for failing to advise them about exemptions in their insurance policy and

17  for failing to recommend that they purchase an "errors and omissions policy" to cover potentially

18  excluded claims. *Id.* at 452-57.  The policy excluded certain claims relating to privacy, publicity

19  and intellectual property, and the insurer denied the group coverage for a lawsuit for Lanham Act

20  violations, which was later settled.   In the coverage suit, the Court held that "[w]hether

21  respondents failed to give competent advice to appellants is an independent question and does

22  not depend on whether [the insurance carrier] was justified in denying coverage under the []

23  policy."  The insurer's denial was a cause of injury separate from the broker's failure to advise

24

7

1    plaintiff to obtain additional coverage. *Id.* at 457-58.

### 3.    Plaintiff Has Suffered Damage in the Amount of Lost Exchange Funds.

"[A]n attorney's liability, as in other negligence cases, is for all damages directly and proximately caused by his negligence." *Smith,* 530 P.2d at 597 (Cal. 1975) (internal citations omitted). SVLG's negligence was a substantial cause of Plaintiff's loss of its exchange funds and its expenses. *See* this Court's January 28, 2013, decision, 2013 WL 322528.

## II.    Superseding Cause

SVLG has asserted the affirmative defense of superseding cause on which it has the burden of proof. Plaintiff contends it cannot meet this burden, because there were no unforeseeable intervening acts that would excuse SVLG from liability. Even if SVLG can establish that subsequent intervening conduct occurred, it does not relieve SVLG of responsibility, because 1031 Advance's attorney, SVLG, had the duty to protect it from this very conduct, it possessed specific skills and knowledge that were not available to plaintiff, and it was foreseeable that SVLG's failure to apply its knowledge and skill as required by the standard of care would result in injury to 1031 Advance.

A defendant may avoid liability by proving the defense of "superseding cause," *Lombardo v. Huysentruyt*, 110 Cal.Rptr.2d 691, 699 (Cal. App. 2001), but it has the burden to prove this affirmative defense. *Arreola v. County of Moterey*, 122 Cal.Rptr.2d 38, 68 (Cal. App. 2002). "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Res-Care, Inc. v. Roto-Rooters Servs. Co.,* 2011 WL 3353893, *12 (N.D.Cal. Aug. 3, 2011) (*citing* Rest.2d Torts, § 440). The act must be subsequent and as an "independent intervening force," it breaks the chain of causation only if it is "highly

8

1    unusual or extraordinary, not reasonably likely to happen, and hence not foreseeable." *Id.* If the

2    risk of injury could reasonably have been foreseen, SVLG is liable. *Id.* *12-13 ("one may be

3    held accountable for creating even the risk of a slight possibility of injury if a reasonably prudent

4    person would not do so") (internal citations omitted); *Gill v. Tamalpais Union High School Dist.*,

5    2008 WL 2043239, *23 (Cal. App. May 14, 2008) (refusing to charge jury with CACI 432;

6    "aggravation of the original injury while seeking or receiving medical attention is foreseeable; it

7    is not a superseding cause even if it involves negligence or malpractice by the subsequent

8    actor.") See Disputed Instructions No. 71 and 72; CACI 432, 433.

9           "Foreseeability" relates to the "general character" of the conduct or harm, and it is not

10    necessary that a particular intervening act was foreseeable.  In other words, the defendant does

11    not escape liability merely because he did not foresee the extent of the harm or the particular

12    manner in which it actually occurred. *Res-Care, Inc.*, 2011 WL 3353893 at *13.

13    "[F]oreseeability is not measured by what is more probable than not, but includes whatever is

14    likely enough in the setting of modern life that a reasonably thoughtful [person] would take

15    account of it in guiding practical conduct." *Id.*

16           In the context of legal malpractice, attorneys must "anticipat[e] reasonably foreseeable

17    risks" to their clients. *Lombardo*, 110 Cal.Rptr.2d at 701.  In *Lombardo*, the Court held that an

18    erroneous order by the probate court was not a superseding cause of a client's injury because a

19    reasonable attorney would have taken steps to avoid the effects of the erroneous order, and the

20    probate court's error was therefore a "foreseeable result of the attorney's negligence." *Id.* at

21    666-669; *see also Kahn v. East Side Union High School Dist.*, 4 Cal.Rptr.3d 103, 124 (Cal.

22    2003) (the defendant's duty was designed to protect plaintiff from the "hazard of being harmed

23

24

1720799.4

1   by the [alleged] intervening force... then the hazard is within the duty, and the intervening force

2   is not a superseding cause").

3           "A client who retains an attorney is entitled to assume that the attorney is competent, and

4   to rely on the attorney's advice.  Thus, the client is not required to second-guess the attorney

5   while the [transaction] is pending." *Mutuelles Unies v. Kroll & Linstrom,* 957 F.2d 707, 712 (9[th]

6   Cir. 1992).  An attorney owes a duty to his client in part because the attorney's skill renders him

7   "substantially more qualified to recognize potential legal problems than the typical client would

8   be." *Janik,* 14 Cal.Rptr.3d at 758.

9           SVLG seeks to rely on alleged criminal acts, but "it is well established under California

10  law that the criminal or negligent acts of a third party do not break the causal link between the

11  defendant's conduct and the alleged injuries, if the defendant's conduct created or increased the

12  risk of such acts." *Vickers v. U.S.,* 228 F.3d 944, 956 (9th Cir. 2000); *see also Scarff v. Jackson*

13  *Nat. Life Ins. Co.,* 2005 WL 1562936, *12 (N.D. Cal. June 24, 2005) (the intentional acts of a

14  third-party are not a superseding cause if "the third person's intentional act was reasonably

15  foreseeable or failure to foresee the act was a factor in the original breach").

16          Plaintiff will establish that any subsequent acts were within the zone of SVLG's duties to

17  guard against and were reasonably foreseeable to SVLG and not a superseding cause of

18  Plaintiff's harm.  Among other things, in light of SVLG's admission that Okun's prior borrowing

19  of exchange funds was a "red flag" *to SVLG,* there is nothing "extraordinary" or "highly

20  unusual" about either the character of the conduct or the harm suffered by 1031 Advance.  On

21  the contrary, it is precisely the type of risk about which SVLG was hired to anticipate and advise

22  1031 Advance.  Even Okun's criminal and/or intentional acts were foreseeable and do not break

23  the link of causation.

24

10

## III.   Comparative Negligence

SVLG argues that 1031 Advance is culpable of comparative negligence, because it knew enough about Okun, his business practices, and exchange contracts and the restrictions on borrowing, and it was equally capable of protecting itself and failed to do so.  For the reasons set forth below, the defense cannot be sustained on these facts.

Comparative or contributory negligence "is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause cooperating with the negligence of the defendant in bringing about the plaintiff's harm."  *Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 809, 119 Cal. Rptr. 858, 862 (1975). "[W]hile a plaintiff's contributory negligence no longer completely bars recovery, it is still a defense that 'reduce[s] the total amount of the plaintiff's damages by the proportion or percentage of negligence attributable to the plaintiff.'"  *Bedolla-Reyes v. Vallier*, 2012 WL 5998571, at *7 (Cal. App. Dec. 3, 2012) (citation omitted); *Ford v. Palmden Restaurants, LLC*, 2012 WL 3089406, *8 (Cal. App. July 31, 2012); *Cohen v. Hoffman, Sabban & Watenmaker*, 2009 WL 1886911, *7 (Cal. App. July 2, 2009); *Karapetian v. Garibian & Associates*, 2006 WL 44428, *2 (Cal. App. Jan. 10, 2006).

"When contributory negligence is alleged as a defense, a trial court must instruct on that issue if there is substantial evidence to support it.  The requisite standard cannot be met by mere speculation or conjecture.  The burden of proving contributory negligence rests upon a defendant."  *Drust v. Drust*, 113 Cal. App. 3d 1, 6, 169 Cal. Rptr. 750, 752-53 (Cal. App. 1980) (internal citations omitted); *Marin v. Joy*, 2009 WL 4194970, *4 (Cal. App. Nov. 25, 2009).

When comparative fault arises in a professional malpractice case, "there is need for the defendant to have offered expert testimony on the issue."  *Barton v. Owen*, 139 Cal. Rptr. 494, 506 (Cal. App. 1977) (medical malpractice); *Bolen v. Woo*, 158 Cal. Rptr. 454, 458-59 (Cal.

11

App. 1979) (in a medical malpractice case it is error to charge the jury "with regard to contributory negligence when there is no expert testimony the plaintiff was negligent"); *but see Charalambopoulos v. UHS of Rancho Springs, Inc.*, 2012 WL 4078783, at *13 (Cal. App. Sept. 18, 2012) (expert medical testimony not necessary "where negligence is obvious to anyone as a matter of common sense").

Whether the plaintiff's conduct qualifies as comparative negligence is normally an issue of fact for the jury to decide. *D & A Mortgage Fund II, L.P. v. Herring & Loftus*, 2002 WL 31421285, *5 (Cal. App. Oct. 29, 2002); *Karapetian*, 2006 WL 44428, at *2. The jury may "consider all relevant criteria in apportioning liability." *Rosh v. Cave Imaging Sys., Inc.*, 32 Cal. Rptr. 2d 136, 139-40 (1994); *Knight v. Jewett*, 3 Cal. 4th 296, 313-14 (Cal. 1992).

SVLG intends to defend this case by "blaming the client:" it will contend that during the course of its representation of 1031 Advance, Dashiell and Allred, and thus 1031 Advance, had the requisite degree of knowledge to have made the right decisions, even though SVLG failed to provide them with competent advice. The law closely circumscribes its ability to raise such a defense in the legal malpractice context.

While comparative fault may be a proper affirmative defense to a legal malpractice claim, *D & A Mortgage Fund II, L.P.*, 2002 WL 31421285, at *4; *Cohen*, 2009 WL 1886911, at *7, "[a] client who retains an attorney is entitled to assume that the attorney is competent, and to rely on the attorney's advice. Thus, the client is not required to second-guess the attorney while the [transaction] is in progress." *Mutuelles*, 957 F.2d at 712. An attorney owes a duty to his client in part because the attorney's skill renders him "substantially more qualified to recognize potential legal problems than the typical client would be." *In re JTS Corp.*, 305 B.R. at 551.

1720799.4

Further, the law charges attorneys with "anticipating reasonably foreseeable risks" to their clients. *Lombardo*, 110 Cal.Rptr.2d at 701. Where the attorney's duty is designed to protect the plaintiff from the hazard of being harmed by an intervening force, the hazard falls within the duty, and the intervening force is not a superseding cause. *See Kahn*, 4 Cal.Rptr.3d at 123-24. "One may be held accountable for creating even the risk of a slight possibility of injury if a reasonably prudent person would not do so." *Res-Care, Inc.*, 2011 WL 3353893, at *13 (internal quotation marks and alterations omitted) (*citing* Rest.2d Torts, § 291).

*Theobald v. Byers*, 13 Cal. Rptr. 864 (Cal. App. 1961) (a pre-comparative fault case), is a good example of why SVLG's claim of comparative negligence should be rejected. There, the Court found that attorneys could not rely on contributory negligence, because it was based on plaintiffs' failure to perform the very acts that they hired the attorneys to perform, to wit, the proper recording of a chattel mortgage that plaintiffs sent them, such that plaintiffs would be secured creditors. The Court held that contributory negligence was a proper defense in a legal malpractice case, but reversed the trial court's finding of plaintiffs' contributory negligence, on the grounds that plaintiffs' failure to inquire of their attorneys or another attorney about whether the chattel mortgage should be acknowledged and recorded, and plaintiffs' failure to acknowledge and record it themselves, were not sufficient, as a matter of law, to constitute contributory negligence:

> We have before us an action in which the very reason that appellants employed respondents was that they desired that their loan . . . be secured in a manner which was legally efficacious. Had appellants desired to make the loan in an informal manner and place their trust solely in the continued solvency of [the borrowers], there would obviously have been no need whatever to employ an attorney to prepare the necessary papers. The trial court specifically found that all parties to the loan wanted the lenders protected in the transaction. Surely there could have been no other reason to employ respondents. The trial court also found that the

13

respondents were negligent and that their negligence was a proximate cause of the loss sustained by appellants, but that appellants are barred from recovery solely because of their failure to themselves perform the very acts for which they employed respondents. Such a result cannot be upheld. Clearly the value of an attorney's services in connection with a transaction of this nature consists largely of his superior knowledge of the necessary legal formalities which must be fulfilled in order for a document to be valid in the eyes of the law. If laymen such as appellants were already familiar with the requirements to be met in order to attain the legal status of secured creditors, it would seem likely that there would be a considerable decrease in the demand for attorneys' services. Appellants employed respondents to perform a specific service for them. Respondents negligently failed to do so. Under these circumstances the trial court erred in finding appellants guilty of contributory negligence merely because they failed to record the chattel mortgage themselves or hire another attorney to do so.

*Id.* at 866-67.

SVLG also seeks to try to establish comparative negligence based upon post-acquisition conduct of 1031 Advance by alleged agents, and based on presumed negligence arising from 1031 Advance's alleged violation of the California Penal Code § 484.

For any of these defenses, SVLG must prove that an identified person engaged in the alleged conduct, and prove, for an entity that the person's conduct is properly imputed to the entity. An agent's actions that are adverse to a corporation – such as stealing its assets - are not typically imputed to a corporation. Similarly, for an owner's conduct to be imputed to the company, high levels of control must be shown over and above the usual control held by all owner's of corporations arising from that ownership. See discussion supra at 17-22.

**IV.    SVLG Cannot Establish the Affirmative Defense of Unclean Hands, and Its Proposed Jury Instruction Is Not Proper.**

SVLG has proposed jury instructions on its unclean hands defense. The Trustee objects, because (1) SVLG does not have a right to a jury trial on this equitable defense; (2) it cannot establish this defense on these facts; and (3) its proposed jury instruction is inadequate.

14

A. **SVLG Does Not Have A Right To A Jury Trial On The**
**Equitable Defense of Unclean Hands.**

In federal court, there is no right to a jury trial on equitable defenses like unclean hands. "[U]nclean hands is equitable . . . and committed to the discretion of the court; there is no right to a jury trial on this defense." *JIPC Management, Inc. v. Incredible Pizza Co., Inc.*, 2009 WL 8591607, at *19 (C.D. Cal. July 14, 2009) (in trademark action seeking monetary damages, only the Court could decide whether the facts supported unclean hands defense); *accord Granite State Insurance Co. v. Smart Modular Technologies, Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature;" lower court properly decided equitable estoppel defense). To the extent that SVLG contends that under California state law,[3] the Court has discretion to determine whether the jury should determine this defense, this argument is without merit. "In a diversity action, federal law governs whether a party is entitled to a jury trial and if so, on what issues." *Granite State Insurance Co.*, 76 F.3d at 1026-27.

Even if there were discretion to decide whether this equitable defense should be decided by the jury, we submit that the Court should not so exercise its discretion due to the nature of the defense and the potential for jury confusion.

First, as we discuss below, unclean hands, unlike comparative fault, is an extreme defense, which precludes a recovery in its entirety, even if SVLG committed malpractice and that malpractice caused $30 million of loss. The defense is based on equitable considerations and principles that the Court can analyze and weigh far better than a jury, for whom many of the considerations and equities may not be readily apparent. The defense must take into account not only the extent of SVLG's wrongdoing and the significant impact it had on 1031 Advance, but

---

[3] See *Unilogic, Inc. v. Burroughs Corp.*, 12 Cal. Rptr. 2d 741 (Cal. App. 1992).

1720799.4

1    the equitable considerations based on the facts that the former wrongdoers are not plaintiffs and

2    will not enjoy the fruits of any recovery.  Instead, any recovery will be distributed to the innocent

3    victims of the Ponzi scheme.

4         Second, as the Court can see from the proposed jury instructions, there is considerable

5    likelihood of jury confusion, particularly in light of the fact that SVLG is also asserting

6    comparative negligence and superseding cause defenses.  SVLG's defenses are based on acts of

7    numerous different people acting at different times and arguably in different capacities.  There

8    are issues as to whether Okun (or others) was ever an agent of 1031 Advance and what was the

9    scope of his duties, if any.  The issues of agency and imputation, particularly with regard to

10   intentional misconduct (the only type of conduct that can support the unclean hands defense) are

11   complicated, lengthy, and lend themselves to confusion.  Intentional acts of misconduct can be

12   imputed to 1031 Advance only under narrow circumstances.  With respect to acts of Janet

13   Dashiell, there is a particular chance of confusion:  some defenses are based on her alleged

14   negligence (pre- or post-acquisition) (comparative negligence); and some are based on her

15   alleged intentionally wrongful conduct post-acquisition, either as an agent of 1031 Advance

16   (unclean hands), or as an agent of a third party (1031 Tax Group, not 1031 Advance)

17   (superseding cause).

18        These agency and imputation determinations will be complicated enough for the Court,

19   Counsel and the jury without unclean hands;  there is no sound reason to add to the layers of

20   complication by adding unclean hands to the jury's deliberations, given the clear federal rule that

21   juries do not decide equitable defenses, even to claims at law.

22

23

24

16

### B.   Unclean Hands Is Based Only On Intentional Misconduct That Is Properly Imputed to the Plaintiff.

The unclean hands defense is an equitable doctrine, applied only where equity demands the extreme result of immunizing a law firm from its own malpractice. *Imperial Credit Industries, Inc. v. Lerner*, 2008 WL 4346785, at *10 (C.D. Cal. Sept. 18, 2008).   The first element of the defense has two components:  the type of conduct, and whether that conduct can be imputed to the plaintiff.

### 1.   Type of Conduct

Only a plaintiff's intentionally bad or criminal conduct, not negligence or even gross negligence, supports this defense. *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.,* 890 F.2d 165, 173 (9th Cir. 1989) ("bad intent is the essence of the defense of unclean hands"); *Ball v. Johanns,* 2008 WL 269069, at *3 (E.D. Cal. Jan. 29, 2008).

### 2.   Can the Misconduct Be Imputed to Plaintiff?

SVLG must also prove that the intentional misconduct is by agents of 1031 Advance that is properly imputed to the Company.  While SVLG is no longer pursuing the defense of *in pari delicto,*[4] the requirements of that defense and agency law as to when an agent's acts can be properly imputed to the plaintiff apply in the same way to unclean hands.  When the plaintiff is a corporation, the unclean hand defense only "applies if, under agency principles, the unlawful actions of an agent of the corporation are imputed to the corporation." *Mosier v. Stonefield Josephson, Inc., CPA's,* 2011 WL 5075551, at *4 (C.D. Cal. Oct. 25, 2011).   Imputation has several requirements.

First, a principal is only charged with the acts of an agent acting within the scope of his or her authority.   *River Colony Estates General Partnership v. Bayview Financial Trading*

---

[4] Although contained in its Answer, SVLG has withdrawn that defense. *See* Proposed Pre-trial Order.

17

1  *Group, Inc.*, 287 F. Supp.2d 1213, 1227 (S.D. Cal. 2003).  Thus, SVLG must prove that any act

2  that it seeks to charge against plaintiff was committed by an actor that was an agent of *1031*

3  *Advance* (not some other party like 1031 Tax Group), who was acting within the scope of his or

4  her duties.

5         To the extent that SVLG contends that an owner or a parent corporation is an agent of

6  1031 Advance or some other entity, SVLG must prove a level of control much higher than

7  simply the fact of ownership and the general degree of management that comes with that

8  ownership relationship.   An owner of a corporation is not deemed to be an agent of the

9  corporation unless a considerable level of control over the corporation by the owner is shown.

10  "The relationship of owner to owned contemplates a close financial connection between parent

11  and subsidiary and a certain degree of direction and management exercised by the former of the

12  latter."  *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 541 (Cal. App. 2000)

13  (*citing Rollins Burdick Hunter of So. Calif. Inc.v. Alexander & Alexander Servs. Inc.*, 206 Cal.

14  App. 3d 1, 9, 253 Cal. Rptr. 338 (Cal. App. 1988).  However, "[t]he nature of the control

15  exercised by the parent over the subsidiary necessary to put the subsidiary in an agency

16  relationship with the parent must be over and above that to be expected as an incident of the

17  parent's ownership of the subsidiary and must reflect the parent's purposeful disregard of the

18  subsidiary's independent corporate existence."   *Id.* at 542.   "The parent's general executive

19  control over the subsidiary is not enough; rather, there must be a strong showing beyond simply

20  facts evidencing 'the broad oversight typically indicated by the common ownership and common

21  directorship' present in a normal parent-subsidiary relationship."   *Id. (quoting Calvert v.*

22  *Huckins,* 875 F. Supp. 674, 679 (E.D. Cal. 1995)).

23

24

18

1    Second, courts "will not impute an agent's actions to his or her principal when the agent's

2    action is adverse to the principal." *River Colony Estates*, 287 F. Supp.2d at 1227, (*citing Meyer*

3    *v. Glenmoor Homes, Inc.,* 246 Cal. App. 2d 242, 264 (Cal. App. 1966)); *FDIC v. O'Melveny &*

4    *Myers*, 969 F.2d 744, 750 (9th Cir. 1992) ("*O'Melveny I*"), *rev'd on other grounds*, 512 U.S. 79

5    (1994), *on remand*, 61 F.3d 17 (9th Cir. 1995) ("*O'Melveny II*").   In that situation, the

6    wrongdoer is not acting on behalf of the entity and as its agent, but rather in his own self-interest.

7    *O'Melveny I*, 969 F.2d at 950 ("corporation is a distinct legal entity separate from its

8    stockholders and from its officers," and a corporation may sustain distinct, actionable harm

9    despite the wrongful conduct of its officers and sole shareholders in causing that harm). The

10   looting of company assets by an agent is a classic example of an action that is adverse to the

11   principal, and thus is not imputed to it. *In re Chinacast Education Corporation Securities*

12   *Litigation*, 2012 WL 6136746, at *10 (C.D. Cal. Dec. 7, 2012); *In re National Consumer*

13   *Mortgage LLC*, 2013 WL 164247, at *11 (D. Nev. Jan. 14, 2013) (applying California law).

14   Here, it is not disputed that taking exchange funds from 1031 Advance and using them for some

15   other purpose was adverse to 1031 Advance.  Thus, such acts cannot support the unclean hands

16   defense, unless SVLG can establish the narrow exception to adverse interest set forth below.

17       The cases recognize a limited exception to this adverse interest rule, known as the sole

18   actor exception, that still permits imputation if SVLG can prove the agent acting adversely to the

19   corporation is the sole decision-maker for the corporation, or that all the decision-makers of the

20   corporation participated in the wrongdoing; that is, it must prove there were no innocent

21   decision-makers.  If SVLG can prove that, then imputation is appropriate.   However, if an

22   innocent decision-maker exists within the corporation, then the wrongdoers and controlling

23   parties are not in unity, and the wrongdoing agent's adverse misconduct cannot be imputed to the

24

19

1   corporation. *In re Chinacast*, 2012 WL 6136746, at *10 n. 9; *Casey v. United States Bank Nat.*

2   *Assn*, 127 Cal.App.4ᵗʰ 1138, 1143 (Cal. App. 2005); *McHale v. Silicon Valley Law Group*, 2011

3   WL 6990187, at *6 (N.D. Cal. Dec. 14, 2011)(Ware, J.).

4       Pursuant to this exception, even if the wrongdoer is the sole owner of the corporation, his

5   adverse misconduct is only imputed to the corporation if SVLG also proves he is the sole

6   decision-maker of the corporation. *Peregrine Funding, Inc. v. Sheppard Mullin Richter &*

7   *Hampton*, 35 Cal. Rptr. 3d 31, 47 (Cal. App. 2005) (actions imputed because actor was "the

8   owner and sole person in control" of the company; *citing Casey*); *McHale*, 2011 WL 6990187, at

9   *6 (for imputation, must show "that those who perpetrated the fraud solely control the

10  corporation").

11      For the sole actor exception, a decision-maker includes any officer, manager, or

12  shareholder who had sufficient authority within the corporation to stop the misconduct if he or

13  she had known about it, and who would have done so. *See, e.g., McHale*, 2011 WL 6990187, at

14  *6 (denying summary judgment to SVLG based on Dashiell's role, because there were issues of

15  fact as to whether Okun was solely in control); *In re National Consumer Mortgage LLC*, 2013

16  WL164247, at *12 (motion denied as jury could find existence of innocent decision-maker;

17  although wrongdoer had *de facto* control, another had the authority to stop the fraud - once she

18  learned of the misconduct, she employed an accounting firm to audit and ultimately put the

19  company into bankruptcy to stop the fraud).[5]

20  _____

21  [5] *See also Silverman v. H.I.L. Associates Ltd. (In re Allou Distributors, Inc.)*, 387 B.R. 365, 391 (Bankr. E.D.N.Y. 2008) ("imputation applies unless at least one decision-maker in a management role or amongst

22  the shareholders is innocent and could have stopped the fraud'; fact that insiders were alleged to have changed the locks when they learned of fraud suggests they had sufficient authority to stop the

23  misconduct and would have done so); *Sharp v. KPMG (In re Sharp International Corp.)*, 278 B.R. 28, 36-37 (Bankr. E.D.N.Y. 2002) (motion to dismiss denied; complaint alleged existence of individual who held

24  13% of the company's stock and was a director; there was at least one innocent member of management who did not know about the fraud but who, had he known about it, could or would have been able to

1720799.4

1    SVLG rests its unclean hands defense on the intentional misconduct of Edward Okun

2    (and/or co-conspirators Coleman, Simring or Field) on or after December 19, 2006, when the

3    sale of 1031 Advance closed, or on its theory that Janet Dashiell engaged in intentional

4    misconduct in 2007 after she learned of current "borrowing" of exchange funds within the 1031

5    Tax Group.  SVLG's Answer does not dispute that no one acting on behalf of 1031 Advance

6    engaged in any intentionally wrongful conduct throughout the period of SVLG's representation

7    of the company.  Answer at 23rd Aff. Def.

8        The Trustee contends that Okun's or his co-conspirators' conduct cannot be imputed to

9    1031 Advance, because their misconduct – the taking of exchange funds for improper purposes –

10   was not as agents of 1031 Advance, and it is undisputed that such misconduct was adverse to

11   1031 Advance.  SVLG cannot sustain the sole actor exception, because it cannot prove that Okun

12   or his co-conspirators were the sole decision-makers of 1031 Advance.  It is undisputed that

13   Okun was the sole shareholder of The 1031 Tax Group, and that it owned 1031 Advance.  But

14   Okun was not the sole shareholder of 1031 Advance, unless one ignores the corporate form of

15   1031 Advance.  Furthermore, it is undisputed that Okun was *never* an officer or employee of

16   1031 Advance, and he had no signature authority over its bank accounts.  The only officers of

17   1031 Advance both before and after the sale transaction were Janet Dashiell and Steve Allred.

18       Finally, the evidence will show that there were at least two innocent decision-makers

19   within the 1031 Tax Group – Janet Dashiell and Dan McCabe – who had the authority to, and

20   did, take actions which caused the scheme to come to a halt.  Thus, SVLG will be unable to

21   prove (i) that Okun (or his cohorts) were agents of 1031 Advance acting within the scope of their

22

23   prevent it); *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.,* 212 B.R. 34, 36 (S.D.N.Y. 1997)
     (wrongful conduct should not be imputed to the plaintiff entity if there is evidence of at least one innocent

24   member of management who could have prevented the fraud had he known about it).

21

1    authority, or (ii) that he, or they, were the sole decision-makers of 1031 Advance. Accordingly,

2    there is no basis for imputing their adverse misconduct to the plaintiff.

3          To the extent that SVLG rests this defense on post-acquisition conduct of Dashiell, it still

4    cannot show there were no other innocent decision-makers. Furthermore, the Trustee contends

5    that SVLG will be unable to show that she ever engaged in intentional misconduct. Once she

6    learned of the misconduct of others, she acted against the wrongdoing -- including using her

7    authority to set up accounts for exchange funds that were unreachable by Okun, directing others

8    to do the same, reporting Okun's conduct to the authorities, and gathering evidence for the

9    Government. Her actions, together with McCabe's, ultimately stopped Okun's scheme.[6]

10    **C.    Even If The Intentional Misconduct Is Properly Imputed to the Plaintiff, SVLG Must Also Show**

11            **That It Was Directly Related to SVLG's Malpractice**.

12          In addition to the misconduct element of unclean hands described above, SVLG must

13    establish a second element, known as relatedness. Because SVLG will not be able to do so, at least

14    with respect to the $23.2 million transferred on December 19, 2006, unclean hands should be

15

16

---

17  [6] SVLG relies on *USACM Liquidating Trust v. Deloitte & Touche LLP*, 764 F.Supp.2d 1210 (D. Nev. 2011) concerning the sole actor rule. In that case, a federal court in Nevada anticipates Nevada law on issues of imputation and the above exceptions. It is not decided under California law and does not rely on California law, although it does recognize the adverse interest exception, the sole actor exception and the role that innocent decisionmakers play in that determination. That case ultimately will be readily distinguishable from the evidence to be presented at this trial, because the Court there determined that the two wrongdoers "had ultimate decision-making authority for all decisions" at the company, whereas in this case, Dashiell was the President and Chief Executive Officer of 1031 Advance (and, later, 1031 Tax Group); McCabe and his family remained the sole managers of IXG; the six qualified intermediaries operated largely independently, and Okun was not involved in the day to day business of them; and Dashiell and McCabe both had the authority, and in fact used their authority, to stop the fraud.

*Breeden v. Kirkpatrick & Lockhart, Inc. (In re The Bennett Funding Group)*, 336 F.3d 94, 101 (2d Cir. 2003), also cited by SVLG, recognizes that a manager or an officer who could have stopped the fraud is sufficient to satisfy this exception. There, the claimed innocent independent directors were "impotent to do anything," whereas here, Dashiell and McCabe had real authority, which they used. *Id.* at 101.

22

1   rejected as inapplicable, or, if the Court determines that is to be decided by a jury, plaintiff will

2   seek a directed verdict on this defense before the jury is allowed to consider it.[7]

3        Not all intentional misconduct by a plaintiff can serve as a basis for the unclean hands

4   defense.  While SVLG insists that the defense can rest on any misconduct at any time, whether or

5   not directed to SVLG, this is not correct and misreads the relevant case law.  The determination of

6   this defense is not a proceeding to try the general morals of the parties, and cannot be based on any

7   bad act at any time, even if the act involves fraud.  *Murillo*, 65 Cal.App.4th 833, 844-45, 77

8   Cal.Rptr.2d 12 (Cal. App. 1998) ("It is not every wrongful act nor even every fraud which prevents

9   a suitor in equity from obtaining relief" with the unclean hands defense); *Kendell Jackson v. The*

10  *Superior Court of Stanislaus County*, 76 Cal.App.4th 970, 90 Cal.Rptr.2d 743 (Cal. App. 1999)

11  ("The determination of the unclean hands defense cannot be distorted into a proceeding to try the

12  general morals of the parties.").

13       Rather, the defense requires that the wrongdoer be guilty of intentional misconduct *directed*

14  *toward SVLG in the transaction for which SVLG was hired*, such that SVLG suffered serious harm

15  as a result of the misconduct *and* it thus affects the equitable relations between the litigants.  *Brown*

16  *v. Grimes*, 192 Cal. App. 4th 265, 283 (Cal. App. 2011) ("If [the wrongdoer] is not guilty of

17  inequitable conduct *toward the defendant* in that transaction, his hands are 'as clean as the court

18  can require.'" (emphasis added)); *Imperial Credit Industries, Inc.* 2008 WL 4346785, at *9 ("The

19  plaintiff's alleged misconduct must relate directly to the transaction that gave rise to the claim for

20  relief.  Courts do not apply the doctrine where the plaintiff's actions did not cause the defendant to

21  suffer serious harm."); *Murillo*, 65 Cal.App.4th at 844-45 ("The misconduct must relate directly to

22

---

[7] While the Court did not consider the merits in Plaintiff's *in limine* Motion No. 1, this issue must still be
23  addressed before allowing the defense to go to the jury.  If the unclean hands defense is deemed
inapplicable to the $23.2 million, the plaintiff will agree to drop its claims for further takings of exchange
24  funds, which should eliminate entirely the unclean hands defense.

1720799.4

1   the transaction concerning which complaint is made, *i.e.*, it must pertain to the very subject matter

2   involved and affect the equitable relations between the litigants."); *Kendell-Jackson*, 76 Cal. App.

3   4th at 979 (same).

4       The "directly related" test is the same as that used in the *in pari delicto* defense, which

5   requires proof that the plaintiff engaged in the same wrongdoing as the defendant.  The *Peregrine*

6   case, on which SVLG invariably relies, makes clear that the two are essentially the same:  it

7   states that unclean hands is "generally referred to in federal decisions as the *in pari delicto*

8   doctrine," and relies on *in pari delicto* decisions in analyzing unclean hands. *Peregrine Funding,*

9   *Inc.,* 133 Cal. App. 4th at 677.  Other courts have likewise noted that the two defenses, over time,

10   have become largely the same.  *See, e.g., Imperial Credit Industries, Inc.,* 2008 WL 4346785 at

11   *10.

12       *In pari delicto* uses a "directly related" test because it bars "one participant in an

13   unlawful act from recovering damages from another participant in the unlawful act." *Mosier,*

14   2011 WL 5075551 at *4.  The defense "dictates that when a participant in illegal, fraudulent or

15   irreputable conducts seeks to recover from another participant *in that conduct*, the parties are

16   deemed to be *in pari delicto* and the law will aid neither, but rather will leave them where it finds

17   them." *Casey,* 127 Cal. App. 4th at 1143 n. 1 (emphasis added); *Imperial Credit,* 2008 WL

18   4346785, at *10.

19       The courts have routinely rejected unclean hands defenses where the misconduct at issue

20   was not directed toward the defendant or directly related to the transaction at issue, even where

21   intentionally wrongful conduct was shown to have occurred.  For example, in *Imperial Credit*

22   *Industries, Inc.,* 2008 WL 4346785, at *11, a company sought to void interested director

23   transactions, and the director-defendants asserted unclean hands based on the plaintiff-

24

24

1   company's participation in its own, separate illegal transactions. The Court rejected the defense,

2   because the company's conduct "did not have a hand in the interested director transaction."  In

3   *Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165, 173 (9th Cir. 1989), a

4   franchisee sought rescission of the franchise agreement, and the franschisor claimed that the

5   franchisee's performance under the agreement barred the claim under the unclean hands

6   doctrine. The court affirmed the rejection of that defense: "any subsequent nonperformance of

7   the franchise agreement did not affect [franchisee's] right to rescission," the transaction at issue.

8   In *Brown v. Grimes*, 192 Cal.App.4th 265, referring attorney (Brown) sued lead counsel (Grimes)

9   for his share of legal fees, and lead counsel sought to bar recovery with the unclean hands

10  defense because Brown had also entered into an illegal fee splitting arrangement with another

11  lawyer, Ross.  The Court rejected the unclean hands defense, even though Ross was pursuing

12  both Brown and Grimes in another case for his claimed share:   although the Brown/Ross

13  arrangement related to the transaction at issue (the Brown/Grimes agreement), the relationship

14  was too attenuated.   The illegal Brown/Ross arrangement was not directed at Grimes nor

15  inequitable toward Grimes, and it did not directly affect or infect the relationship between Brown

16  and Grimes. *Accord Jaramillo v. County of Orange*, 200 Cal. App. 4th 811, 820 (Cal. App. 2011)

17  (subsequent felonies do not support unclean hands, because they were not related to wrongful

18  termination at issue).

19       As in all of these cases, SVLG's unclean hands defense must likewise fail, and we submit

20  that it fails as a matter of law on undisputed facts such that it should not be considered by the Court

21  or the jury, at least as to the $23.2 million.[8]

22  _____

23  [8] SVLG has previously relied on *Peregrine Inc.*, 133 Cal. App. 4th 658, but that case is fundamentally
    different from the case at bar and is consistent with the Trustee's argument. There, the law firm
    represented the perpetrators of the scheme *while they were engaged in it* and then helped them to avoid

24  detection and prosecution. *Id.* at 665-67. Here, precisely the opposite was true: (i) SVLG represented 1031

25

### 1.   The Alleged Misconduct Is Not Directly Related To SVLG's Legal Malpractice and Did Not Harm SVLG

In Plaintiff's *Motion In Limine* No. 1 ("Motion"), the Trustee argued that SVLG could not prove that any of the alleged misconduct was directly related to SVLG's malpractice, or was directed toward SVLG, because SVLG admits that 1031 Advance was entirely innocent when the legal services at issue in this case were rendered, and the subsequent events were not directly related to those services.   The Court did not decide the motion on the merits.   The same issues arise again for determination, at least at the conclusion of the evidence:   whether there is a factual basis for the defense, and if so, how the defense should be charged to the jury if the court determines that the defense is triable to the jury.   Because (i) the clients were innocent at the time of representation and none of the alleged post-acquisition wrongful acts were directly related to the transaction or were directed at SVLG, or (ii) the alleged misconduct only arose due to SVLG's poor legal advice, SVLG cannot establish unclean hands.

*Lee v. Montgomery*, 2008 WL 4052920 (Cal. App. Sept. 2, 2008), is nearly identical to this case.   Lee, a bank loan officer, consulted Montgomery, an attorney, about possibly representing the bank concerning a loan transaction involving an entity "SIT" and an arrangement in which: (i) Lee's brother's company (the "Company") would assist SIT to obtain a loan from a bank; (ii) SIT would grant stock options to the Company; and (iii) the Company would give Lee SIT stock.   When Montgomery told this to the Bank, it terminated Lee.   Lee sued

---

Advance when it was innocent and was considering selling itself to a buyer, who was engaged in wrongdoing; and (ii) if SVLG had provided proper advice, 1031 Advance would never have been sold and would have been protected from the wrongdoing and harm.

SVLG also previously cited *Kendall-Jackson*, 76 Cal. App. 4th 970, but that is not a legal malpractice case, but rather a "disfavored" malicious prosecution case, to which unclean hands is applied more readily. *Id.* at 986-87.   Again, unlike here, the wrongful acts occurred at the same time as the events in the lawsuit underlying the malicious prosecution action, and were thus "directly related" to it. *Id.* at 985, 987.   As noted below, this case is also distinguishable because the plaintiff is an innocent trustee, not the intentional wrongdoer.

26

1720799.4

1   Montgomery for legal malpractice, and the Court granted Montgomery summary judgment on the

2   ground that Lee had unclean hands, because his transaction violated federal bribery laws and the

3   Bank's Code of Conduct.  The appellate court reversed and held that Lee did not have unclean hands,

4   because he "sought advice from . . . Montgomery about [the] very question [of] whether there was

5   anything wrong with pursuing that business arrangement." *Id.* at *7.  Montgomery failed properly to

6   advise Lee about the violations, and if she had done so, he would not have proceeded and his hands

7   would have been "clean."  "To conclude as a matter of law that a party has unclean hands based

8   on his or her inquiry about the propriety of a proposed business arrangement would defeat the

9   very purpose of seeking legal advice." *Id.* at *8.

10        SVLG's defense is based on the argument that post-acquisition, 1031 Advance (through

11   alleged agents Okun or Dashiell) engaged in misconduct by taking or allowing exchange funds to

12   be taken.  Under *Lee,* the unclean hands defense is barred in this context, because 1031 Advance

13   only engaged in the alleged misconduct as a direct result of SVLG's poor legal advice on this

14   issue during the transaction.  Had SVLG advised Dashiell properly and conducted due diligence

15   on the admitted red flags that arose during the transaction concerning Okun's prior practices in

16   using exchange funds and the QI's questionable financial condition, she would never have sold

17   1031 Advance to 1031 Tax Group in the first place.  Further, SVLG's poor advice led her to

18   believe post-acquisition that some borrowing of exchange funds was acceptable. Plaintiff cannot

19   be charged with alleged misconduct that only occurred due to SVLG's improper legal advice, and

20   was foreseeable at the time the advice was given.[9]

21

22

─────────────────

23   [9] For this reason, this case is distinguishable from cases relied upon by SVLG, where the misconduct –
     committing perjury, or violating statutory prohibitions for public officials – was misconduct known as
     such by the clients, without reliance on their attorneys' legal advice. *See Blain v. Doctor's Co.,* 222 Cal.
24   App. 3d 1048 (Cal. App. 1990); *Chapman v. Superior Court,* 130 Cal. App. 4th 261 (Cal. App. 2005).

27

1    Moreover, such alleged misconduct could not be "directly related" to SVLG's

2    malpractice, because there is no allegation that SVLG assisted the wrongdoers.  Because

3    SVLG's representation of 1031 Advance concluded with the sale transaction in December 2006,

4    no post-acquisition wrongful conduct can be "directly related" to the malpractice claim,

5    constitute inequitable conduct "toward the defendant," or cause direct injury to SVLG.[10]  SVLG

6    is not accused of being a participant in the wrongdoing, a fundamental requirement of these

7    defenses.  *See Casey, supra* at 4; *Mosier, supra* at 4.

8          In *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594 (7th Cir. 2012), the Seventh

9    Circuit recently reached the same conclusion as *Lee* in connection with the *in pari delicto*

10   defense, and did so on facts even more favorable to the defendant than are present here.  There, a

11   bankruptcy trustee for a debtor, which had engaged in a Ponzi scheme, sued the debtor's auditor

12   for malpractice, and the lower court granted the auditor's motion to dismiss on grounds of *in pari*

13   *delicto*.  The Seventh Circuit reversed for the same reasons we argue here: the malpractice claim

14   arose from the auditor's work in 2006 and 2007, which was *before* the Trustee contended that the

15   debtor's insider, Bell, was aware of or participated in the Ponzi scheme.  The fact that Bell

16   participated in the scheme one to two years later, and then pleaded guilty for it, could only

17   support the *in pari delicto* defense for the later period and could not be imputed to and  taint the

18   debtor for the prior periods.   Since the auditor's client was innocent at the time of the

19   malpractice, the claim was not barred by *in pari delicto*.  *Id.* at 597.

20          Thus, even though the *Peterson* insiders were the intentional wrongdoers *after* the

21   malpractice had occurred, the Seventh Circuit held, as did *Lee*, that to determine relatedness, the

---

23   [10] This situation would be no different than if one of the post-acquisition officers or owners of 1031
     Advance has robbed a bank or embezzled some other entity in order to further 1031 Advance's interest by
     bringing money into 1031 Advance.  Such misconduct would be unrelated to SVLG.

28

1   applicability of the *in pari delicto* equitable defense must be determined as of the time the

2   professional renders services to the client. Here, as SVLG's answer concedes, it is undisputed

3   that 1031 Advance sought advice as an innocent client to be protected from Okun and was

4   innocent through the sale of the company, which is the period of SVLG's services. Since there is

5   also no evidence that Okun's pre-acquisition wrongdoing at the buyer had anything to do with

6   1031 Advance, that conduct cannot be imputed to 1031 Advance in any way. Thus, there is no

7   basis for these defenses, particularly as to the $23.2 million transferred immediately upon sale.

8       In sum, these defenses do not apply to 1031 Advance if, before it engaged in any

9   wrongdoing, it "did nothing more than consult counsel to find out about how, or whether, to

10  proceed," *Lee,* 2008 WL 4052920 at *9. As in *Lee* and *Peterson*, at the time of SVLG's

11  representation, 1031 Advance and its principals were undisputedly innocent, and any conduct

12  thereafter was not directed at SVLG or related to the malpractice.

### 2.   Under No Circumstances Can The Unclean Hands Defense Affect the $23.2 Million Lost From 1031 Advance on December 19, 2006.

13

14      Plaintiff seeks to recover $23.2 million transferred from 1031 Advance into Okun's control

15  immediately after the purchase price was received from 1031 Tax Group on December 19, 2006,

16  and another approximately $11.7 million lost in March and April 2007, or in the alternative the net

17  amount of $31.2 million in funds missing at 1031 Advance upon filing for bankruptcy on May 14,

18  2007.

19      The sale transaction documents were signed on December 18, 2006, but the 1031 Tax

20  Group did not send the purchase price of $2.5 million to SVLG's escrow account until the next

21  day, December 19, 2006. Dashiell and Allred were poised and waiting for the check to arrive so

22  that they could then facilitate the transfer of 1031 Advance's exchange funds to 1031 Tax Group's

23  account at Wachovia. There will be conflicting evidence presented at trial about what SVLG knew

24

29

1 │ and what advice it gave or did not give about this transfer. But as to the events surrounding the

2 │ transfer, the facts are undisputed, and they cannot possibly support an unclean hands defense.

3 │     Okun did not order the transfer and had no authority over those funds. Rather, Dashiell and

4 │ Allred – still undeniably innocent of any wrongdoing – were the only ones with access and

5 │ authority over those funds. The intended transfer of essentially all of 1031 Advance's exchange

6 │ funds to Wachovia had been part of the transaction, and known to SVLG, since early in the

7 │ negotiations. The parties agreed that the funds would be transferred to Wachovia upon the closing,

8 │ and Dashiell and Allred transferred them as promised. Once transferred, the funds were out of

9 │ their control, into Okun's control, and out of 1031 Advance. On these facts, there is no intentional

10 │ misconduct that is "directly related" to SVLG's malpractice, directed toward SVLG or caused

11 │ serious harm to SVLG. Any alleged misconduct by Okun or others in taking these funds (if it is

12 │ imputable to 1031 Advance, which the Trustee denies) occurred after the funds were out of the

13 │ control of Dashiell and Allred, and out of 1031 Advance. Such misconduct (if imputable) is not

14 │ directly related to SVLG or its malpractice.

15 │     Thus, with respect to the $23.2 million loss, the undisputed facts establish that the unclean

16 │ hands defense simply does not apply, because there was no intentional misconduct by Okun or

17 │ Dashiell or anyone else that caused that loss, only the actions of innocent individuals (Dashiell and

18 │ Allred) transferring the funds in reliance on their attorneys' poor legal advice. Even SVLG does

19 │ not claim that Dashiell and Allred's transfer of these funds was intentional misconduct, and to the

20 │ extent SVLG claims such acts were negligent, they relate only to its comparative negligence

21 │ defense. Thus, if, over plaintiff's objection, the unclean hands defense is submitted to the jury, the

22 │ Court should instruct that the defense does not apply to the $23.2 million of damages. If the Court

23 │

24 │

1    decides this defense, it similarly should only be considered with respect to the $11.7 million lost in

2    spring 2007, or to the balance of the $31.2 million less the $23.2 million.

3    **D.    Equity Requires Denial of The Unclean Hands Defense.**

4         Unclean hands is an equitable doctrine. Even if SVLG could meet its burden of proving

5    each element, it should be applied only where equity is served. Here, no equitable result will be

6    achieved by barring the Trustee's claim against SVLG. SVLG did not represent the perpetrators

7    of the Ponzi scheme as was true in *Peregrine*.[11] Rather, its clients were innocent victims of the

8    wrongdoing, which would not have been swept into the scheme if SVLG had performed

9    appropriately. To bar the Trustee's claims against SVLG effectively rewards SVLG for the very

10   conduct that caused 1031 Advance to become caught in the Ponzi scheme and makes no sense.[12]

11        Furthermore, expanding the use of unclean hands to bar a malpractice suit against

12   one's own attorneys on these facts should be disfavored in light of California's replacement

13   of contributory negligence as a bar to plaintiff's recovery with a comparative fault system,

14   under which a tortfeasor is responsible for the proximate consequences of his misconduct. *Li*,

15   13 Cal. 3d at 829.[13] This doctrine eliminates the obvious unfairness of contributory negligence,

16   which, like unclean hands, "completely exonerated a negligent defendant whenever an injured

17   plaintiff was partially at fault." *Am. Motorcycle Assoc. v. The Superior Court of Los Angeles*

18   *County,* 20 Cal. 3d 578, 607 (Cal. 1978). Comparative fault allows relief to the more innocent

19   ───────────────────────

[11] For the company that was admittedly owned and controlled by the perpetrator of the Ponzi scheme "to now

20   complain of [its lawyers'] role in enabling it to commit the fraud is unfair, and it is precisely this sort of unfairness the unclean hands doctrine seeks to address." *Peregrine*, at 681. Such concerns are irrelevant in the context here.

[12] This Court has recognized that public policy is not served by imputing insider wrongdoing to bar a company's

21   claim where an innocent successor will assure that the funds go to the company's innocent creditors rather than to the wrongdoers. *U.S. Fire Ins. Co. v. Vesta Strategies, LLC*, No. C 09-02388 JW (N.D. Cal. July 14, 2011) (Ware,

22   J.). Dkt. 70 at Ex. 48. There the wrongdoers were directly running the company at the time of the defendant's wrongdoing.

23   [13] Comparative fault is a proper defense in a malpractice case. *Theobald v. Byers*, 13 Cal. Rptr. 864, 867 (Cal. Ct. App. 1961). As with unclean hands, comparative fault principles involve factual issues for which summary judgment is

24   inappropriate. *Wright v. Stang Mfg. Co.*, 63 Cal. Rptr. 2d 422, 431 (Cal.. App. 1997).

1720799.4

1   party, who is not entirely blameless, and is the antithesis of "unclean hands." The entire burden

2   of a loss should not be "shouldered onto one alone, . . . while the latter goes scot free." *Id.*,

3   *quoting* Prosser, *Law of Torts*, s. 50, p. 307.

4       Equity is not served by precluding the Trustee's claim. The wrongdoers were not

5   involved at the time of the malpractice, and they are no longer in control and will not benefit

6   from any recovery. Innocent parties likely will be injured by barring the Trustee and may

7   recover nothing (or at best a few of them may recover if they succeed on their much more

8   difficult aiding and abetting claims). As for deterrence, holding SVLG responsible for its

9   misconduct will serve to deter others similarly situated from engaging in similar wrongdoing at

10   the expense of the companies they serve.

11       **E.**    **Unclean Hands Should Not Be Applied against a Bankruptcy Trustee.**

12       The Trustee maintains that the unclean hands defense does not apply to a bankruptcy

13   trustee, and that the Ninth Circuit has stated that bankruptcy trustees, like receivers, are not

14   subject to this defense for many of the same equitable reasons stated above. The Trustee has

15   previously briefed this issue for the Court, and incorporates its prior arguments by reference. *See*

16   Trustee's Memorandum of Points and Authorities in Opposition to SVLG's Motion for Summary

17   Judgment, or in the Alternative, Partial Summary Judgment, dated October 29, 2011 (Dkt. 68) at

18   31-33; Plaintiff's Motion *in Limine* No. 1 to Exclude Unclean Hands and *In Pari Delicto*

19   Defenses, dated November 19, 2012 (Dkt. 111) at 9-11.

20   **V.**    **SVLG Should Not Be Permitted to Offer Testimony of Its Damages Expert
    Curtis Burr In Light Of The Court's January 28, 2013 Decision.**

21       SVLG intends to call Curtis A. Burr ("Burr") as a damage expert. Mr. Burr has produced

22   a report and was deposed on September 14, 2011. On January 28, 2013, the Court denied

23   SVLG's renewed motion for partial summary judgment on damages ("Jan. 28 Decision"). Dkt #

24

32

125.   The Court held that (1) when the exchange funds were wrongly transferred to 1031 Tax Group, 1031 Advance owned the funds, pp. 6-7; (2) the Trustee has standing because of the injury 1031 Advance suffered when it lost these assets, and it is not asserting claims on behalf of the company's creditors, p. 9; (3) "the loss of the Exchange Funds is a cognizable injury to 1031 Advance itself," p. 9; and (4) the Trustee can recover an amount of damages in accordance with California tort damage principles, including "the amount of damages caused by the loss of Exchange Funds." p. 13.   In light of the Court's January 28 Decision, the Court should preclude SVLG from offering the testimony of Mr. Burr, because his proffered testimony is not relevant.

Burr is limited to what is set forth in his expert reports.   In his first report, dated June 27, 2011, Burr stated that "*assuming for purposes of analysis only*, that liability is found, *and it is determined that the proper measure of damages is based on claims of the Exchange participants of the 1031 Debtors*, damages recoverable from SVLG are $1,183,049.65."   Burr Report at 6 (emphasis added), excerpts of which are attached to the Devorkin Pretrial Declaration as Exhibit 1.   Mr. Burr explained that this figure is the amount of damages suffered by exchanger clients of 1031 Advance who had placed funds with 1031 Advance on or before December 19, 2006, and whose funds were transferred to 1031 Tax Group as part of the $23.2 million transfer that day. After reviewing additional information provided at the July 18, 2011, deposition of plaintiff's forensic expert John Sordillo, Mr. Burr supplemented his report on September 12, 2011.   *Id.*, Exh. 2.   In that supplement, he revised that calculation upward to $2,413,987, but his opinion was based on the same assumption:   "assuming for purposes of analysis only, that liability is found, and it is determined that the proper measure of damages is based on claims of the Exchange participants of the 1031 Debtor, 1031 Advance, Inc."   *Id.*, Exh.  2, p. 2.   At his

33

1720799.4

1  deposition, Burr repeated that the proper measure of damages "is the amount of damages to the

2  exchange depositors who had deposits on 12/19/06." *Id.*, Exh. 3, Tr. 152 (excerpts).

3       While Burr has also admitted that the purpose of a damage calculation is "to restore the

4  injured party to where they would have been but for the event that caused the loss," *Id.*, Exh. 3,

5  Tr. 49, he has now twice made clear that his report and opinion are based entirely on the

6  assumption that the proper measure of damages is the damages to the exchange participants as of

7  December 19, 2006.  This assumption is the premise for his testimony.  Thus, his testimony is

8  dependent on this Court determining that the "the proper measure of damages is based on claims

9  of the Exchange participants." *Id.*, Tr. 151.  Indeed, he admitted that the judge presiding at the

10 trial would determine the correct legal standard to apply. *Id.,* Tr. 46-48.[14]  Since the January 28

11 Decision rejects SVLG's theory that damages will be determined by the particularized injury to

12 any group of exchangers, the Court has now rejected the damages theory on which Burr's expert

13 opinion is based.  Thus, his testimony is not relevant, and the Court should not permit it. *See*

14 *Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 758, 766 (Fed. Cl. 2006) (striking irrelevant

15 portions of an expert report concerning damages subsequent to a certain date, after the court had

16 concluded that plaintiff may not seek damages beyond that date).

17 Dated: February 22, 2013                    Respectfully submitted,

18                                             GOLENBOCK EISEMAN ASSOR  BELL &
                                               PESKOE LLP

19                                                  s/ Michael S. Devorkin
20                                             Michael S. Devorkin, *pro hac vice*
                                               Jacqueline G. Veit, *pro hac vice*

21                                             Attorneys for Plaintiff Gerard A. McHale Jr., P.A.
                                               as Trustee for the 1031 Debtors  Trust

22

23 _____
   [14] Burr admitted that his report (*Id.*, Exh. 1, pp. 4-5), cited and followed only legal opinions from
   jurisdictions outside of California and the 9th Circuit, and agreed that Judge Ware would
24 ultimately have to determine the proper legal standard. *Id.,* Exh. 3, Tr. 46-48.

                                        34

1720799.4