NILS ROSENQUEST [SB# 87661]
ROSENQUEST & ASSOCIATES
2720 Taylor Street, Suite 420
San Francisco, California 94133
Telephone: 415-292-0980
Facsimile: 415-292-0989
Email: rosenquest@earthlink.net

MICHAEL S. DEVORKIN (pro hac vice)
JACQUELINE G. VEIT (pro hac vice)
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022
Telephone: 212-907-7300
Facsimile: 212-754-0330
Email: mdevorkin@golenbock.com
Email: jveit@golenbock.com

Attorneys for Plaintiff Gerard A. McHale, Jr., P.A., Liquidation Trustee

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

| | |
|---|---|
| GERARD A. MCHALE, Jr., P.A., as Liquidation Trustee for the 1031 Debtors Liquidation Trust,<br><br>Plaintiff,<br>v.<br><br>SILICON VALLEY LAW GROUP, a professional corporation,<br><br>Defendant. | Case No. CV 10-04864-JCS<br><br>**PLAINTIFF'S MEMORANDUM OF LAW NO. 5 IN SUPPORT OF REQUEST FOR RECONSIDERATION OF CERTAIN RULINGS ON BRODY DEPOSITION TESTIMONY** |

Plaintiff Gerard A. McHale, Jr., P.A., Liquidation Trustee for the 1031 Debtors Liquidation Trust (the "Trustee"), submits this memorandum of law in support of its request that the Court reconsider the admissibility of certain testimony of Myron Brody, the Chief Executive Officer of defendant Silicon Valley Law Group ("SVLG"), applicable to the pertinent standard of care and SVLG's breach of that standard of care.

Brody is the CEO of SVLG and one of the heads of its real estate practice. He testified that he is the attorney at SVLG most familiar with 1031 exchange transactions. He was deposed as CEO and also as SVLG's designated Rule 30(b)(6) witness for the topics of the practices and procedures generally used by SVLG's real estate department to conduct factual and legal due diligence on real estate transactions for which SVLG was retained by its clients.

The Court sustained SVLG's objections to the following testimony of Brody:

(i) If confronted with the information about borrowing that his partner Jim Chapman received via an email from Dashiell, Brody would have requested a copy of the exchange contract to see whether the exchanger had consented to the funds being borrowed. Based on the terms of 1031 Advance's agreement, he testified that "I'd be advising my client that to loan money would be a breach of contract under the existing agreement, and that you would need to get the approval of the exchangers if you wanted them to be able to loan them money without a breach of contract." (Brody, 1/7/11 at 111:17-21, 113:10-16, 21-25, 114:15-22, 115:4-20. The evidence will show that Chapman did none of these things.

(ii) The existence of the duties of attorneys at issue in this case. (Brody, 4/6/11, 99:6-12; 99:17-100:18, 20; 101:5-102:25; 105:25-107:17)

    (iii)    If in the course of representing an exchanger, he learned that a QI owner was borrowing exchange funds and it violated the QI's contracts, Brody would be concerned that the QI owner was breaking the contracts; that the QI would not be able to perform; and that the QI owner was not acting with honesty and integrity. In that instance, he would not trust the owner, and would not want his client to do business with him. (Brody 4/6/11, 140:25-142:19, 147:16-148:11)

    (iv)    The only way to know if a QI owner is breaching the exchange agreements by borrowing is to look at the exchange agreement. (Brody 4/6/11, 143:22-144:9)

This evidence should be admitted as admissions of a party, and/or as admissions by a Rule 30(b)(6) witness. With this testimony, Brody admits to the standard of care applicable to attorneys, including Chapman in this case. Further, his testimony about what he would have done when confronted with the issues at hand constitute admissions of SVLG pertinent to the determination of whether SVLG satisfied its duties in this case. Indeed, if Brody, as the CEO, had been asked, "was Chapman negligent?" and he answered "yes," that would certainly be admissible as a party admission. Similarly, if he had testified as to the reason why Chapman was negligent, that too would be an admission. The questions and answers above are no different – they ask him what the duties are for lawyers, and ask what appropriate actions would be when confronted with the facts with which Chapman was confronted.

Although certain (though not all) of the testimony arises in the context of Brody representing an exchanger, rather than representing a qualified intermediary being sold, the interests of these clients is the same, and the distinction is not a basis to preclude the testimony. An exchanger, as Brody acknowledges, in concerned with the safety of the funds and the

integrity of the QI to ensure that the funds will be provided to close his transaction. Similarly, the seller of a QI has an interest in ensuring that its clients' transactions will close, and that the exchange funds will be safe and secure post-sale.

Further, the fact that Brody's testimony at times arises in response to hypothetical questions does not preclude its admissibility. Opinion and/or hypothetical testimony is admissible and appropriate from fact witnesses and persons other than retained and designated experts in various circumstances. For example, lay fact witnesses may respond to hypothetical questions based upon their personal experience and knowledge, which is precisely the type of testimony elicited here. In *Eisenberg v. Gagnon*, 766 F.2d 770, 780-81 (3d Cir. 1985), the Court upheld the district court's decision to allow a former partner of the defendant law firm to provide non-expert testimony under Rule 701 about what he would have done if he had known the facts known to his partners. The Court explained that Rule 701 "has greatly expanded the realm of opinion testimony by allowing non-experts to give opinions or inferences that are '(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." *Id.* "Such testimony is admissible even if it 'embraces an ultimate issue to be decided by the trier of fact.'" *Id.* at 781, (*citing* Fed R. Evid. 704). *Accord Tranter v. Joseph*, 2011 WL 137769, at *9 (Cal. App. Jan. 18, 2011) (causation established in legal malpractice case by plaintiffs' testimony as to what they would have done if the defendant/attorney had conveyed the weakness of their claim); *United States v. Hill*, 643 F.3d 807, 840-42 (11th Cir. 2011) (district court did not abuse its discretion by permitting the witnesses who had personally dealt with the fraudulent loan transactions to respond to the

government's questions about what would have happened if the facts had been different, namely, whether the loans would have been approved if certain information had been known).[1]

Similarly, in *In re Consol. Delta Smelt Cases*, 812 F. Supp. 2d 1133 (E.D. Cal. 2011), *judgment vacated, appeal dismissed* (Aug. 23, 2012), the Court held that the testimony of two farmers based on their business and industry experience was admissible opinion testimony of lay witnesses:

> Here, Mrs. Mettler and Mr. Stiefvater are farmers personally familiar with the water allocations their farms receive and the cost increases that will likely occur if water supplies are decreased. Personal knowledge acquired through management and operation of one's business, as well as experience in the industry, provides a foundation for lay testimony and opinion about the economic aspects of one's own business, general practices in the industry, and how one's business actions might change under different circumstances. *United States v. Hill*, 643 F.3d 807, 840–42 (11th Cir. 2011) (permitting officer or employee of a corporation to offer lay opinion testimony about industry standards and pricing); *Eckelkamp v. Beste*, 315 F.3d 863, 872 (8th Cir. 2002) (perceptions based on industry experience provide foundation for lay testimony); *National Hispanic Circus v. Rex Trucking*, 414 F.3d 546, 551–52 (5th Cir. 2005) (corporate manager permitted to testify about matters related to business expertise).
>
> Mr. Mettler's and Mr. Stiefvater's observations regarding past and prospective reduced water allocations, and the effects of such reductions, are lay opinions; they are opinions or inferences "predicated upon concrete facts within their own observation and recollection." Defendants' objections are OVERRULED. The

---

[1] While there are cases to the contrary, the general consensus in this district is that unpublished state court decisions, while not binding precedent on the federal court, may be relied on as "persuasive authority." *See Scottsdale v. Ou Interests*, 2005 WL 2893865 *7 (N.D. Cal. Nov. 2, 2005) (relying on unpublished California intermediate appellate court decision presenting factual situation "virtually identical" to the case before the district court, as "persuasive authority"). *See also Cole v. Doe 1 Thru 2 Officer of the City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1103, n. 7 (N.D. Cal. 2005) (acknowledging California Rule of Court prohibiting citation of or reliance on unpublished state court decision but stating that rule is "not binding in the federal courts" and can be relied on for the case's "persuasive reasoning"). *And see Spinner Corp. v. Princeville Development Corp.*, 849 F.2d 388, 390, n. 2 (9th Cir. 1988) ("[T]he unreported decision of a state district court . . . is not binding on us, although we may rely on it to the extent its reasoning is persuasive").

> nature of their experience goes to the weight their lay testimony will be afforded vis-à-vis other, expert witness testimony.

*Id.* at 1191.

In addition, a "lay witness is permitted to express opinions so long as those opinions are based on his own perception, helpful to a clear understanding of his testimony or a factual issue in the case, and not based on scientific, technical or other specialized knowledge." *United States v. Corona*, 359 Fed. App'x 848, 852 (9th Cir. 2009) (citing Fed. R. Evid. 701). "The Advisory Committee Notes specifically provide that Federal Rule of Evidence 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their own experiences." *U.S. ex rel. Technica, LLC v. Carolina Cas. Ins. Co.*, 2012 WL 1229885, at *5 (S.D. Cal. Apr. 12, 2012) (citing Fed. R. Evid. 701 Advisory Comm. Notes).

For example, treating physicians who are not retained as testifying experts, but who may nonetheless have the scientific knowledge and background of a retained expert, are entitled to testify as to the facts they observed, their opinions developed during the course of treatment, and the reasons for those opinions. *See, e.g., Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 819 (9th Cir. 2011) ("[T]reating physicians are excused from th[e] requirement [of providing a written report]. They are a species of percipient witness. They are not specially hired to provide expert testimony; rather, they are hired to treat the patient and may testify to and opine on what they saw and did.")[2]

---

[2] SVLG has previously cited authority that fails to address these situations and does not support SVLG's sweeping position that opinions and hypotheticals can never be answered by lay witnesses. The holding in *Mantolete v. Bolger*, 96 F.R.D. 179, 181-82 (D. Ariz. 1982), which dealt with the circumstances under which a party could obtain discovery from a non-testifying expert, nowhere addressed whether a non-designated lay witness may provide opinion testimony. The other cases cited by SVLG involve witnesses with highly technical or specialized expertise. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008) (witness called as a "gang specialist" and who was regularly employed to give expert opinions about gangs); *Dagdagan v. City of Vallejo*, 263 F.R.D. 632, 635 (E.D. Cal. 2009) (asking police officer questions requiring expertise on search warrants, arrest warrants and passive resistance); *Moran v.*

5

On this authority, the Brody testimony should be admitted. He testifies based on his own knowledge as an experienced attorney and a real estate partner familiar with 1031 transactions. As Brody is the CEO of SVLG and testified as such, the testimony constitutes admissions of a party on clearly relevant issues, namely, the duties applicable to lawyers like Chapman, and the appropriate steps to take and advice to give clients when faced with the facts presented to Chapman.

## Conclusion

The Trustee respectfully requests that the Court reconsider its order sustaining SVLG's objections to this testimony.

Dated: August 27, 2013

Respectfully submitted,

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP

s/ Michael S. Devorkin
Michael S. Devorkin, Esq. *(pro hac vice)*
Jacqueline G. Veit, Esq. *(pro hac vice)*

Attorneys for Plaintiff Gerard A. McHale, Jr., P.A. as
Liquidation Trustee for the
1031 Debtors Liquidation Trust

---

*Pittsburgh-Des Moines Steel Co.*, 6 F.R.D. 594, 595 (W.D. Pa. 1947) (asking defendant's chief civil engineer questions regarding the use of steel in the design of a particular tank).